Robert L. SPRINGS, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–357.

District of Columbia Court of Appeals.

Argued April 16, 1992.
Decided Aug. 4, 1992.

Steven Weinberg, appointed by the court, for appellant.

Michael F. Tubach, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman, Ronald Dixon and Henry K. Kopel, Asst. U.S. Attys., were on the brief, for appellee.

Before STEADMAN, WAGNER, and KING, Associate Judges.

KING, Associate Judge:

Appellant challenges the denial of his motion to withdraw his guilty pleas. Appellant entered pleas of guilty to armed kidnapping, D.C.Code §§ 22–2101, –3202 (1989), and sodomy, D.C.Code § 22–3502 (1989), and was sentenced to consecutive terms of fifteen years to life imprisonment on the armed kidnapping charge, and three and one third years to ten years on the sodomy count. On appeal appellant makes three claims of trial court error: (1) the trial court abused its discretion by denying the motion to withdraw appellant's guilty pleas; (2) the trial court erred in not conducting a specialized hearing to determine appellant's mental competence to enter a guilty plea; and (3) the trial court erred in not informing appellant of the consequences of failing to assert an insanity defense and failing to inquire whether appellant was freely waiving that defense. We affirm.

## GUILTY PLEA

Appellant entered his guilty pleas on March 21, 1989, before Judge Peter Wolf (hereinafter the "plea judge"). During that proceeding, the government proffered that on the evening of the offense, the complaining witness was waiting for a bus in Southeast, Washington, D.C. Appellant pulled up in an automobile and offered her a ride which she declined. Appellant then got out of the car, wielded a knife, and forced her inside the vehicle. He then drove to Anacostia Park where he parked the car. While in Anacostia Park, appellant beat the complaining witness and sexu-

ally assaulted her. After the attack, she managed to escape and find her way to a nearby construction site where she found a construction worker who provided her with medical attention and who called the police. The officer who responded noted that the complaining witness's face was swollen, that she was bleeding from the head, and that she was "uneasy on her feet." The victim provided the officer with a general description of her assailant and also reported the license number of the car her assailant had driven. Within ten to fifteen minutes after the police arrived, an automobile with a license plate matching the one the witness provided was located approximately 100 yards away. Inside the car, appellant was found sleeping on the front seat under a sheet which was covered with what appeared to be blood.

In a handwritten pleading dated April 4, 1989, which was file-stamped at the courthouse on April 12, 1989, appellant moved *pro se* to withdraw his guilty pleas based solely on the ground that at the time of the plea he was not in his "right frame of mind due to the medicine that he was on." On May 15, 1989, however, through counsel, appellant filed a written motion to strike the *pro se* motion to withdraw the pleas. On May 23, 1989, the date set for sentencing, appellant again changed his mind and orally requested that his pleas be withdrawn. He also submitted a written *pro se* motion to withdraw guilty pleas which was dated May 23, 1989. The trial court continued the sentencing date and appointed new counsel who filed a formal motion to withdraw the guilty pleas on August 2, 1989. Judge Richardo Urbina ("hearing judge") conducted hearings on that motion on November 2, 1989, and January 11, 1990. On March 8, 1990, he entered a written order, together with findings of facts and conclusions of law, denying the motions to withdraw the guilty pleas. Thereafter, appel-

lant was sentenced and this appeal followed.

## MENTAL COMPETENCY

Prior to the entry of the guilty pleas there was a series of orders and hearings relating to competency determinations. On April 14, 1988, the trial court ordered appellant examined by the Legal Services Division of the Mental Health Commission to determine his competency to stand trial. At a hearing on May 26, 1988, further examination was ordered on an in-patient basis. On June 24, 1988, an in-patient services report indicated appellant was incompetent to stand trial. On July 12, 1988, the trial court found appellant incompetent to stand trial and ordered him returned to St. Elizabeths Hospital for further treatment and evaluation. A September 9, 1988 report prepared at the hospital concluded that appellant was a malingerer and that he was competent to stand trial. Finally, as a result of that report and hearings conducted on October 2, 1988, and October 12, 1988, the trial court concluded that appellant was competent to stand trial. A trial date was then set; however, appellant entered his guilty pleas on March 21, 1989.

### I. *Motion to Withdraw Guilty Plea*

A defendant may successfully move to withdraw a guilty plea under Rule 32(e)[1] by establishing either of two separate and independent grounds. He may make a showing of a fatal defect in the Rule 11[2] proceeding at which the guilty plea was taken or that justice demands withdrawal in the circumstances of the individual case. *Gooding v. United States,* 529 A.2d 301, 305–06 (D.C.1987) *(Gooding II).* In this case, there was no claim of any Rule 11 defect;[3] therefore, appellant can only prevail on the latter ground. A mo-

---

1. Super.Ct.Crim.R. 32(e) provides:
   A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.

2. Super.Ct.Crim.R. 11.

3. Appellant's arguments relating to an allegedly insufficient inquiry into competency to plead guilty and into the possibility of an insanity defense are discussed in Parts II and III of this opinion.

tion to withdraw asserted after sentencing should be granted only upon a showing of "manifest injustice." *Gooding II, supra,* at 306. On the other hand, a motion to withdraw a guilty plea made before sentencing is regarded more leniently and should be given favorable consideration " 'if for any reason the granting of the privilege seems fair and just.' " *Id.* at 306 (citation omitted). Since appellant's motion was filed prior to sentencing, the fair and just standard applies.

■ *Gooding II* sets out factors which the trial judge must consider when evaluating a motion to withdraw a guilty plea under the fair and just standard: (1) "whether the defendant has asserted his or her legal innocence"; (2) "the length of the delay between entry of the guilty plea and the desire to withdraw it;" and (3) "whether the accused has had the full benefit of competent counsel at all relevant times." *Id.* at 306–07. The *Gooding II* court also noted that, when analyzing the assertion of innocence factor, the plea judge should consider the strength of the government's proffer and, if there has been a valid assertion of legal innocence, the reason the claimed defense was not put forward at the time of the plea. *Id.* Further, when analyzing the length of delay factor, the court should consider whether the government would be prejudiced by a withdrawal of the plea measured as of the time the defendant sought to withdraw it, not some later time. *Id.* at 307. Finally, the court also noted that the "circumstances of the individual case may reveal other factors which will affect the calculation.... under the fair and just standard." *Id.* The court concluded, however, that "none of these factors is controlling and the trial court must consider them cumulatively in the context of the individual case." *Gooding II, supra,* at 306. The determination of whether to allow withdrawal of a guilty plea is left to the sound discretion of the trial court and reversal will be required only upon a showing of abuse of discretion. *Id.*

### Assertion of Legal Innocence

Appellant claims he asserted his innocence in the second *pro se* motion to withdraw his guilty pleas dated May 23, 1989, and during the hearing on the motion on November 2, 1989. Judge Urbina concluded, however, that "Mr. Springs, contrary to the defendant in *Gooding [II]*, did not at any time give the Judge who took the plea any inkling of a defense and to this day has not indicated any defense to the charges." Based upon appellant's failure to assert a cognizable defense, the trial judge concluded that Springs failed to assert his innocence in the manner required by existing caselaw.

In *Gooding II,* we observed that "[o]ne important factor in these fair and just withdrawal motions is whether the defendant has asserted his or her legal innocence." *Gooding II, supra,* 529 A.2d at 306 (citing *Everett v. United States,* 119 U.S.App.D.C. 60, 63 n. 10, 336 F.2d 979, 982 n. 10 (1964)). "Such an assertion standing alone does not, of course, require that the motion be granted." *Id.* at 306 (citations omitted). In *Gooding II,* the defendant asserted a duress defense as grounds for the withdrawal of his guilty plea. *Id.* at 307–08. The court noted that Gooding advanced this defense in his motion to withdraw the plea, at the hearing on the withdrawal motion, in proposed findings of fact and conclusions of law filed after the withdrawal motion, and on appeal. *Id.* at 308–09. The court held that "[a]ppellant's repeated assertions of legal innocence throughout these proceedings weigh heavily in favor of the conclusion that withdrawal of the guilty plea would be fair and just." *Id.* at 309 (footnote omitted). Unlike *Gooding II,* the record in this case, as the hearing judge found, provides no support for a determination that appellant made an early or effective assertion of legal innocence.

The first communication on this subject was the *pro se* pleading requesting withdrawal of the guilty pleas sent to the plea judge by appellant which was received on April 12, 1989. In that pleading, there was no mention of non-culpability. Appellant's sole basis for seeking withdrawal of the plea was his claim that he was not in the "right frame of mind."

In the May 23, 1989 *pro se* motion to withdraw, appellant asserted, without elaboration, that he "did not commit" the offense and that he was innocent of the charges. When he appeared in court that same day, he informed the court that he had a good defense to the charge. When pressed by the trial court to state his defense, appellant replied both that he had not been "picked from the lineup" and that he "happened to be at the wrong place at the wrong time."

Since the court was then considering appellant's request for appointment of a new attorney, appellant was understandably reluctant to discuss this point further until he had an opportunity to consult any new attorney appointed to represent him, and the trial court did not press him further. New counsel was appointed shortly thereafter and a twenty page formal motion to withdraw the guilty plea was prepared and filed some months later. Significantly, that motion contains no claim of innocence of any kind. Finally at the hearing on that motion appellant testified, without elaboration, that he "factually did not commit the offense [he was] was charged with."

■ As we said above, a claim of innocence is an important, but not dispositive, factor to be weighed by the trial judge in deciding whether, in the exercise of discretion, a motion to withdraw a guilty plea, under the fair and just standard should be granted. It is not enough, however, simply to claim one is innocent or that one did not commit the offense. "A bald assertion of innocence ... without any grounds in support thereof will not give a defendant the absolute right to withdraw his guilty plea." *Patterson v. United States*, 479 A.2d 335, 340 (D.C.1984). The trial judge should not attempt to decide the merits of any defense put forward. *Gearhart v. United States*, 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959). However, the movant must set forth some facts, which when accepted as true, make out some legally cognizable defense to the charges, in order to effectively deny culpability. *United States v. Barker*, 168 U.S.App.D.C. 312, 324, 514 F.2d 208, 220, *cert denied*, 421 U.S. 1013, 95 S.Ct.

2420, 44 L.Ed.2d 682 (1975); *Gooding v. United States*, 513 A.2d 1320, 1344 (D.C. 1986) (*Gooding I*) (Ferren, J., dissenting); *Jordan v. United States*, 350 A.2d 735 (D.C.1976).

■ Appellant has done little more than make a "bald assertion of innocence" with no elaboration concerning the defense or defenses he might interpose. The most he has said is that there was a lineup misidentification and that he was in the wrong place at the wrong time. For these purposes, the judge was obligated to assume the facts asserted were true, *see Gearhart v. United States*, *supra*, and then determine whether the asserted facts constituted a legally cognizable defense to the charge. If the judge concludes that no proper defense has been advanced, the judge is then free to find that no adequate claim of innocence has been advanced. *Jordan v. United States*, *supra*, 350 A.2d at 735, 737–738. That is precisely what the hearing judge did here, and we hold that the judge's conclusion that appellant failed to make a sufficient denial of culpability to avail himself of the benefit of this factor of the fair and just standard was supported by the record before him.

Cases in the federal courts also hold that more than a blanket claim of innocence is required. In *United States v. Rojas*, 898 F.2d 40 (5th Cir.1990), the defendant sought to withdraw his guilty plea on the grounds that he was innocent. The Fifth Circuit stated that "a defendant's motion to withdraw need not necessarily be granted if 'no credible reason is proffered.'" *Id.* at 43. In *United States v. Ramos*, 810 F.2d 308 (1st Cir.1987), the defendant moved to withdraw his guilty plea claiming innocence. The *Ramos* court recognized that an assertion of innocence is important, but added that "if defendant's factual contentions create no 'legally cognizable defense' to the charges, 'he has not effectively denied his culpability,' and the motion can be denied." *Id.* at 312 (citations omitted); *United States v. Cannistraro*, 734 F.Supp. 1110, 1121 (D.N.J.1990) (defendant's conclusory assertion of innocence is an insufficient basis to withdraw a guilty plea.) In

*United States v. Barker, supra,* the defendant pleaded guilty to seven counts of the indictment charging offenses arising out of the Watergate break-in. As a basis for the motion to withdraw the guilty plea, defendant asserted that "someone or some agency in the Government wished them to plead guilty." *Id.* at 327–28, 514 F.2d at 223–24. The court concluded that there was no evidence to support appellant's position and then held that "[i]f the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted." *Id.* at 324, 514 F.2d at 220. The *Barker* court added, "[h]owever, ... the mere assertion of a legally cognizable defense is [not] always a sufficient condition for securing withdrawal of a plea." *Id.* at 325, 514 F.2d at 221.

We are satisfied that our precedent and federal cases require one seeking to withdraw a guilty plea to do more than assert a simple claim of innocence. In order to obtain relief, such a claim must be supported either by a legally cognizable defense or by some cognizable reason. *Patterson, supra,* 479 A.2d at 340. Accordingly, we conclude that Judge Urbina did not abuse his discretion when he found that appellant's mere assertion of innocence, which was not supported by allegations of an adequate factual basis, was insufficient.

We are buttressed in this conclusion by a comparison of appellant's belated claims of innocence with the proffer made by the government, appellant's sworn adoption of the facts contained in that proffer, and appellant's own sworn admissions made at the time the pleas were entered. In *Gooding II,* we concluded that the facts relating to the offense proffered by the government at the time of the plea bear upon the adequacy of appellant's claim of non-culpability. *Id.* at 309. Before considering the legal effect of the government's proffer, we believe it instructive to set out in some detail the facts the government represented it would prove and what appellant, himself, admitted at the time of the taking of the plea.

The government informed the court that the complaining witness was waiting for a bus late one evening in Southeast Washington. The defendant pulled up in an automobile and offered her a ride which she refused. He then exited the car, produced a knife, forced her into the car, and drove to Anacostia Park where he parked the car. Appellant then beat the complaining witness and sexually assaulted her. Later, she managed to escape to a nearby construction site where workers were engaged in Metro construction. The workers discovered the complaining witness, provided her with medical attention and called the police. The police officer who arrived, moments later, observed that the complaining witness had a swollen face, that she was bleeding from the head and that she was "uneasy on her feet." The complaining witness provided a general description of her assailant and the license number of the car which her assailant had been driving. That car was found approximately 100 yards away with the same license number provided by the complaining witness. Appellant was found asleep inside the car under a sheet which was covered by what appeared to be blood. Finally, the complaining witness made an on-scene identification of appellant as her attacker.

Appellant was placed under oath and he acknowledged that the events recited above were what in fact occurred that evening. In his own words, appellant stated: "I got out of the car, forced the lady inside the car and drove off;" that he forced her inside the car "with a knife"; that he "drove to Anacostia Park"; that he "had sex with her in the anus"; and, when asked whether she agreed to having sexual relations with him, appellant responded, "No, Sir."

In *Gooding II,* the court observed that the government's proffer was a weak one which could not necessarily defeat a substantial claim of innocence. *Id.* at 309. The reverse is true in this case. The government's proffer together with appellant's sworn statements made at the time of the pleas provided a factual context which overwhelms appellant's lame and unsupport-

ed claims of non-culpability.[4] In *Austin v. United States*, 356 A.2d 648, 649 (1976), we upheld the trial court's denial of a pre-sentence motion to withdraw a guilty plea because the plea record included a clear statement of culpability by the defendant which we held the trial judge was free to credit over appellant's denial of involvement at the plea withdrawal hearing. *See also Taylor v. United States*, 366 A.2d 444, 447 (D.C.1976). In this case, the factual basis for the plea is substantial, and, in the absence of any legally cognizable claim of innocence, we conclude that there is ample support for Judge Urbina's finding that appellant failed to establish that the claim of innocence factor[5] should weigh in his favor.

### The Length of Delay Between Entry of the Guilty Plea and the Desire to Withdraw It

■ The court should also examine the length of delay between entry of the guilty plea and the desire to withdraw it. *Gooding II, supra*, 529 A.2d at 310. " 'A swift change of heart is itself a strong indication that the plea was entered in haste and confusion;' [w]ithdrawal motions promptly made are regarded with 'particular favor.' " *Id.* at 307 (citations omitted).

The guilty plea was entered on March 21, 1989. Appellant's first expression of a desire to withdraw the plea was contained in a handwritten pleading which reached the court on April 12, 1989—three weeks after the plea. On May 15, 1989, counsel, at appellant's request, filed a written motion to strike the handwritten request to withdraw pleas, based upon instructions counsel received from appellant shortly after being notified by the trial judge that appel-

lant had submitted the request to withdraw. On May 23, 1989, eight weeks after the plea, appellant again requested that his plea be withdrawn.

In the Findings of Fact and Conclusions of Law, Judge Urbina observed:

> Mr. Springs informed the Court on April 12, 1989, some three weeks after his plea that he was not in a state of mind sufficient to have completely pled guilty. However, at the time of the plea his assertion of mental unreadiness was fully explored by the court and resolved. Mr. Springs after notifying the Court on April 12, 1989, that he wanted to withdraw, then withdrew his *pro se* motion of April 12, 1989, on May 15, 1989 by motion to strike the April 12 motion. At no time after April 12 and up to May 23, 1989 did Mr. Springs write to the Court disavowing the May 15 motion as unapproved by him. In this Court's view this is an after thought and contrived. Mr. Springs has not shown any reluctance to write to the Court on issues he thought concerned him. This factor weighs heavily in this Court's decision to deny Mr. Springs' instant motion.

Appellant challenges the hearing judge's method for calculating the time between various events that occurred. We can find no basis for concluding that the description of the sequence of events found by the hearing judge as set out above is unsupported.

We note that appellant waited three weeks from the time he entered the guilty plea on March 21, 1989, until he first sought to withdraw that plea on April 12, 1989. Another week elapsed from the time appellant, through counsel, moved to vacate the plea withdrawal request on May

4. The attorney who represented appellant at the time of the plea testified at the hearing on the motion to withdraw that appellant had "virtually no defense ... it was an overwhelming government case."

5. The hearing judge did not address at any length the sub-issue relating to the reason the alleged defense was not asserted at the time the plea was entered, since in the judges view Springs never put forward a cognizable defense. The judge noted:

> The court has no reason before it that explains why Mr. Springs did not assert [his claimed factual defense] at the plea. Mr. Springs glosses over this fact by stating he was incompetent and he was pressured at the time of the plea. However, since the plea, no clear assertion has come forward detailing a viable defense.

As we have observed in the text, there was ample basis in the record for the hearing judge's conclusion that no viable defense has ever been asserted.

15, 1989, and appellant's renewal of the request to withdraw on May 23, 1989. In contrast, the defendant in *Gooding II* sought to withdraw the guilty plea "within a few days of its entry." *Id.* at 303.

Gooding was quite prompt in announcing his desire to withdraw his plea. Appellant, however, waited three weeks, and his subsequent vacillation weighs against him in the analysis of the delay factor. Having withdrawn his initial motion, appellant's first effective request to withdraw his guilty pleas occurred eight weeks after he entered them. In *United States v. Crosby,* 714 F.2d 185 (1st Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984), the defendant also waited eight weeks until the day of sentencing before asserting his desire to withdraw his guilty plea. The court considered that period of delay to be a significant factor adverse to Crosby's claim and affirmed the trial court denial of Crosby's motion. *Id.* at 192. *See United States v. McKoy,* 207 U.S.App.D.C. 112, 113, 645 F.2d 1037, 1038 (1984) (withdrawal motion filed five weeks after plea not a swift attempt at retraction). Judge Urbina concluded [6] that this factor should operate against appellant because the delay, when compared with that present in *Gooding II,* was considerable. We cannot say, based on this record, that the trial judge was wrong in that conclusion.

### The Competent Assistance of Counsel

■ The record of representation in this case is, unfortunately, an all too familiar one which reveals some undesirable aspects of a system that can sometimes be too indulgent as it attempts to provide competent counsel for indigent defendants. Appellant was arrested on August 6, 1987, and charged with rape. When he first appeared in court an attorney from the Public Defender Service was appointed to represent him. Six months later, appellant complained about the performance of that attorney. The attorney's appointment was vacated, and a second attorney was ap-

pointed. The new attorney, associated with one of the law school clinical programs, was replaced, less than two months later, after appellant complained that the attorney did "not meet the minimum requirements of counsel, has not represented him appropriately, and that [appellant] no longer has any trust or confidence in counsel."

The trial court then appointed two other Public Defender Service attorneys to represent appellant. Within weeks appellant complained that the new attorneys had "acted in bad faith." They too were allowed to withdraw. Finally, counsel who represented appellant at the plea proceeding ("plea counsel") was appointed. That attorney is a long time practitioner at the criminal bar who regularly receives appointment in the most serious cases that are filed. Appellant also complained about that attorney's representation; however, after a hearing, the trial judge declined to grant appellant's request to vacate that appointment. In addition, a second attorney entered her appearance after the plea was entered to provide assistance to plea counsel in preparation for sentencing.

A review of the record reveals that plea counsel filed motions to suppress identification, statements, and tangible evidence and, as discussed more fully *infra,* investigated the feasibility of an insanity defense. In addition, he or co-counsel visited appellant regularly while appellant was incarcerated, and numerous prospective witnesses were interviewed by investigators and several of the other attorneys who represented appellant during the course of this proceeding. Plea counsel also arranged to have appellant view the physical evidence. Judge Urbina considered these factors together with his own observation and drew the following conclusions:

This Court notes at the outset that Mr. Springs has gone through four competent attorneys that were appointed to represent him. Mr. Springs had difficul-

---

6. The government has not claimed, and the hearing judge did not find, that the government would be prejudiced by a withdrawal of the guilty plea. That finding of course does not,

standing alone, entitle appellant to withdraw his plea. *See Gooding II, supra,* at 306 ("none of the factors is controlling"); *United States v. Abreu,* 964 F.2d 16, 19–20 (D.C.Cir.1992).

ty with all of his lawyers, and it appears he did so by design to delay the legal process. Indeed, Mr. Springs on January 11, 1990, moved to have Mr. _____, his present counsel, removed. This Court heard that motion, evaluated it, and denied it.

[Plea counsel's] testimony of January 11, 1990, is most enlightening. It shows, that Mr. Springs is manipulative, sophisticated, and fully aware of all of his actions. [Plea counsel] testified that there came a time when he admonished Mr. Springs to stop the act. Thereafter, Mr. Springs' entire conduct changed and they proceeded to discuss the guilty plea, which he subsequently took. The record is replete with evidence that excellent counsel have always been appointed to represent Mr. Springs. Mr. Springs fabricated his mental condition on March 21, 1989, and is attempting to perpetuate a fraud upon the Court. This conduct weighs against him in determining whether it would be fair and just to allow withdrawal of his plea.

We can find no basis in this record for concluding otherwise.

■ Unfortunately, what we do find is a defendant who was able to obtain the appointment of a seemingly endless succession of able attorneys for no reason other than his own apparent inability to get along with any of them. A criminal defendant is entitled under the Sixth Amendment to be represented by counsel who renders reasonably effective assistance. *See Monroe v. United States*, 389 A.2d 811, 822 (D.C. 1978), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). The Sixth Amendment does not, however, guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). Appellant may not have been happy with the attorneys appointed to represent him, but the record in this case demonstrates that his attorneys provided him the representation he was entitled to receive under the Sixth Amendment.

In sum, we have evaluated Judge Urbina's analysis of all the factors that he was required to consider by *Gooding II*. We are satisfied, that weighing those factors and considering them "cumulatively in the context of the ... case," he could permissibly conclude that appellant is entitled to no relief. Accordingly, we hold that the trial court did not abuse its discretion when it denied appellant's motion to withdraw the guilty pleas.

II. *Pre Plea Competency Hearing*

■ Where the issue of mental competence has been raised, the trial court is required to conduct a specialized hearing to determine the competence of a defendant seeking to plead guilty. *Willis v. United States*, 468 A.2d 1320, 1323 (D.C.1983). However, a special competency hearing is not required " '(1) where the hearing prior to entry of the plea established competence based on psychiatric evaluation; and (2) where no new factual issues pertaining to mental competence were raised in the motion to withdraw.' " *Carmichael v. United States*, 479 A.2d 325, 327 (D.C.1984); *See Hunter v. United States*, 548 A.2d 806, 810 n. 10 (D.C.1988).

■ Springs contends the trial court was required *sua sponte* to conduct a specialized hearing to determine whether he was mentally competent to enter guilty pleas. *Willis v. United States, supra*. He bases his argument on the claim that at the time he entered the plea "he felt different from October, at which time he had been found competent to stand trial" and that "he felt like he needed to see a doctor as he didn't feel that he was in the right state of mind and he was having trouble concentrating and focusing on reality." Appellant further maintains he was not thinking clearly at the time of the plea because of his medication. Specifically, Springs stated that "he began to think clearly after his dosage of medication was cut down subsequent to the entry of his guilty plea."

We find appellant's argument unpersuasive. First, we note that the hearings on competency were conducted by Judge Wolf only months before the guilty pleas were

received by him, and appellant's competence was established based on psychiatric evaluations and testimony. *See Carmichael v. United States, supra,* 479 A.2d at 327. A report submitted on September 9, 1988, by psychiatric personnel at St. Elizabeths Hospital concluded that Springs was competent to stand trial. In proceedings conducted on October 2, 1988, and October 12, 1988, which included the testimony of at least one medical expert, the trial court found appellant competent to stand trial. This was five months before the same judge conducted the plea proceeding.

Moreover, appellant has failed to raise any new factual issues pertaining to mental competence. Appellant did testify at the November 2, 1989, hearing on the motion to withdraw his guilty plea, that he was not feeling like himself at the time of the plea and his medication caused him to be confused. The trial court, however, carefully addressed appellant's mental condition at the plea hearing by making an exhaustive inquiry with respect to that point.

Furthermore, appellant's reliance on *Willis* is misplaced. In *Willis,* the defendant sought to withdraw his guilty plea claiming he was not competent at the time of the plea. This court held that the trial court was not required to conduct a separate hearing to determine if the defendant was competent to enter a guilty plea under circumstances where appellant was determined to be a malingerer. A similar diagnosis was made of appellant. In this case, the judge who took the plea was aware of both appellant's medical records and the testimony of examining psychiatrists who were of the view that appellant was using the competency issue to manipulate the system. In short, we find that no further inquiry was called for and that appellant is not entitled to relief on this ground.

### III. Frendak *Issue*

■ Whenever evidence suggests a substantial question of the defendant's sanity at the time of the offense, the trial judge must conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert an insanity defense, and freely chooses to raise or waive the defense. *Frendak v. United States,* 408 A.2d 364, 380 (D.C.1979). Appellant asserts that the trial court erred by not engaging in a dialogue with him to ensure these requirements were met.

In *Frendak,* evidence relating to an insanity defense was introduced during the competency proceedings. Reports indicated that at the time of the offense "Frendak had been suffering from a mental illness which impaired her behavioral controls to such an extent that she could not appreciate the wrongfulness of her conduct and could not conform her conduct to the requirements of the law." *Frendak, supra,* at 368. We held that since the trial judge failed to "make a specific finding with regard to whether Frendak had made an intelligent and voluntary decision on whether to raise the defense" a remand was necessary for a determination of whether appellant had "intelligently and voluntarily" waived the insanity defense.

■ We find nothing in this record that would suggest to the trial court that there was a "substantial question" of appellant's sanity at the time of the offense. Indeed, all indications are to the contrary. During the various court proceedings, the trial judge engaged in several discussions with defense counsel regarding the possibility of an insanity defense. First, during the March 21, 1989 plea proceeding, Judge Wolf raised the *Frendak* issue and was assured by counsel that insanity at the time of the offense was not a consideration. At the May 23, 1989 proceeding, counsel elaborated by informing the court[7] that a Dr. Shapiro had examined appellant in this case for the purpose of determining whether an insanity defense could be raised. Dr. Shapiro was thoroughly familiar with appellant's history, having examined him in

---

7. Counsel provided this information out of the presence of the prosecutor, but with the defendant present.

other cases. He concluded that a viable insanity defense was not present in this case. To this date appellant has presented no evidence, such as, for example, the testimony of a qualified expert, that casts any doubt upon that conclusion. Finally, at the January 11, 1990, hearing to withdraw the guilty plea, plea counsel testified that an insanity defense was not a realistic option.

We conclude, therefore, that the record presented to the plea judge did not present a "substantial question" of appellant's insanity at the time the offense was committed. *See Robinson v. United States*, 565 A.2d 964, 967–68 (D.C.1989) (*Frendak* inquiry not required where psychiatric report indicated defendant not insane at the time of the offense). Therefore, the trial judge was not required to undertake an inquiry of appellant concerning the possible raising of an insanity defense. Accordingly, the order of the trial judge denying appellant's motion to withdraw guilty pleas is

*Affirmed.*