**Robert W. BYRD, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 99–CO–164.**

District of Columbia Court of Appeals.

Argued March 14, 2002.

Decided June 6, 2002.

---

Gregory A. Cotter, Washington, DC, appointed by the court, for appellant.

Jonathan W. Haray, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Margaret A. Carroll, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

This appeal requires us to remand for resentencing because of the government's failure to honor a plea agreement.

## I.

A fifteen-count indictment charged appellant with one count of first-degree murder while armed (premeditated),[1] three

1. D.C.Code §§ 22–2401, –3202 (1996), now codified at D.C.Code §§ 22–2101, –4502

counts of possession of a firearm during a crime of violence,[2] two counts of assault with intent to kill while armed,[3] five counts of assaulting a member of the fire department with a dangerous weapon,[4] and two counts each of carrying a pistol without a license[5] and possession of an unregistered firearm.[6] Trial began on October 19, 1998. The next day, after the government's opening statement, defense counsel informed the court that there was a possible plea and disclosed the terms of the government's offer. Counsel requested time to discuss the plea offer with appellant before making an opening statement.

After reconvening and recessing two more times, at the request of defense counsel—and some two hours after defense counsel first informed the court of the possible plea—counsel reported that a plea agreement had been reached. Specifically, appellant was willing to plead guilty to one count of first-degree premeditated murder while armed, one count of unarmed assault with intent to kill, four counts of assault on a member of the fire department, and one count of unarmed manslaughter for a homicide unrelated to the other charges. As consideration for the plea, the government would recommend concurrent sentences for the five assault counts, to run consecutively to sentences on the murder and manslaughter counts. The parties agreed that, at sentencing, both the government and appellant would recommend a sentence of thirty years to life for the murder, ten to thirty years for the manslaughter, and five to fifteen years for the assault counts, for an aggregate sentence of forty-five years to life.

The prosecutor did not dispute any term of the agreement as stated by defense counsel. Handwritten on the top of the "Waiver Trial by Jury" form, signed by the parties and the court, is a list of the charges to which appellant was pleading followed by the statement "Parties agree to total sentence of 45 years to life." The court then placed appellant under oath and conducted the colloquy required by Super. Ct.Crim. R. 11. Appellant responded properly to each of the judge's questions, indicating that he knowingly and voluntarily was pleading guilty to each of the charges as stated, that he was satisfied with the services of his attorney, that he had had enough time to think about his decision to plead guilty, that the government's proffers of the facts with respect to each of the offenses were correct, that he understood the charges of the offenses to which he was pleading guilty as well as the elements thereof, and that he wished to enter a guilty plea to each of the murder, manslaughter and assault charges. The court accepted the pleas and scheduled sentencing for December 18, 1998.

On November 15, 1998, some three and a half weeks after entering his plea, appellant sent the trial judge a handwritten letter in which he sought to withdraw the guilty pleas. He claimed that he had been under a great deal of pressure at the time he pled guilty and that his attorney had not properly prepared for his defense. Appellant later supplemented this letter

(2001).

**2.** D.C.Code § 22–3204(b) (1996), now codified at D.C.Code § 22–4504(b) (2001).

**3.** D.C.Code §§ 22–501, –3202 (1996), now codified at D.C.Code §§ 22–401, –4502 (2001).

**4.** D.C.Code § 22–505(b) (1996), now codified at D.C.Code § 22–405(b) (2001).

**5.** D.C.Code § 22–3204(a) (1996), now codified at D.C.Code § 22–4504(a) (2001).

**6.** D.C.Code § 6–2311(a) (1996), now codified at D.C.Code § 7–2502.01 (2001).

with a handwritten *pro se* motion to withdraw the plea, in which he claimed he had pled guilty in haste after his attorney informed him that an acquittal was unlikely. The trial court appointed new defense counsel and rescheduled sentencing. Counsel filed a supplemental motion to withdraw guilty plea, arguing that leave should be given for withdrawal of the plea because the motion was timely (*i.e.*, before sentencing), appellant was the victim of misidentification, and appellant was under undue pressure to plead guilty. The court denied the motion in a written order dated January 29, 1999, finding that appellant had made "no colorable showing of ineffective assistance" and had not asserted any deficiency in the Rule 11 proceeding.

At sentencing on February 5, 1999, the trial judge reiterated his decision to deny appellant's motion and the reasons therefor, and found that there was no fair or just reason to permit appellant to withdraw his pleas. Thereafter, the prosecutor offered, in relevant part, the following allocution as to sentencing:

> The Government understands and is well aware though we made the plea offer and Mr. Byrd accepted the plea back then, that was the only act of mercy that he actually showed by basically sparing the families of the additional mental misery. We understand that although we've made the plea offer to ... Mr. Byrd and we are bound by our agreement, the court is not bound by that and ultimately it is the court that makes the final decision with regard to Mr. Byrd and what appropriate sentence should be fashioned in this particular case. So the Government is asking that the court impose a sentence that reflects

the seriousness of this particular offense. And that's all we have to say at this particular point.

The government's allocution failed to mention the forty-five-years-to-life sentence specified by the original plea agreement. Immediately after the allocution, defense counsel asserted that the government had violated its obligation by not bringing the parties' agreement to the court's attention. Counsel argued that this breach supported the motion to withdraw guilty pleas.

The court ruled that the agreement had not been violated because the government had not asked the court to impose a sentence in excess of the amount specified by the parties. The court then imposed a sentence, in the aggregate, of fifty-eight years to life in prison.[7]

## II.

Appellant contends that, for two reasons, the trial court abused its discretion in denying the motion to withdraw his guilty pleas. First, he contends, the government violated the plea agreement. Second, he argues, the two hours between the prosecutor's opening statement and the announcement of the plea agreement in open court comprised too short a period for appellant to have agreed—knowingly and voluntarily—to plead guilty, no matter what he said during the Rule 11 colloquy.

■ "There are two ways in which an accused may successfully move to withdraw a guilty plea under Super. Ct.Crim. R. 32(e), one of which is to establish a fatal defect in the Rule 11 proceeding at which the guilty plea was entered," the other to

---

7. The judge imposed consecutive sentences of thirty years to life for first-degree murder, fifteen years to life for assault with intent to kill (an apparent error; *see infra*, note 9), and ten to thirty years for manslaughter, plus three to nine years for each of the other assaults (the latter terms to run concurrently with one another but consecutively to the other sentences).

show "that justice demands withdrawal in the circumstances of the individual case." *Pettiford v. United States,* 700 A.2d 207, 216 (D.C.1997) (internal quotations omitted). When a motion to withdraw is made prior to sentencing, as it was here, the motion should be granted "if for any reason the granting of the privilege seems fair and just." *Id.* (internal quotations omitted).

#### A.

■ Challenging the Rule 11 colloquy, appellant argues that he "went from the absence of a plea offer to the finalization of a plea agreement in two hours—in a case involving the most serious of charges.... [T]he entire consideration process occurred during a compressed period of time in either the courtroom or the stark confines of the dock behind the courtroom.... Regardless of what [appellant] said at the Rule 11 hearing, the circumstances under which the plea agreement was negotiated and finalized permit absolutely no level of comfort or satisfaction that [appellant's] actions were knowing and voluntary." Our summary of the relevant portions of the Rule 11 discussion in Part I above, as well as our review of the entire record, satisfies us that nothing supports a finding of a fatal defect in the Rule 11 colloquy or in the trial judge's finding that appellant was pleading guilty both knowingly and voluntarily. Thus, appellant does not meet the heavy burden of showing that the trial judge abused his discretion in denying appellant's motion to withdraw his guilty plea.

#### B.

■ In determining whether withdrawal of a plea agreement would be fair and just, the court applies three factors: whether the defendant has asserted his or her legal innocence, the length of delay between entry of the guilty plea and the defendant's expression of a desire to withdraw it, and whether the defendant had the benefit of competent counsel at all relevant times. *Id.* And, the "circumstances of the individual case may reveal other factors which will affect the calculation as to withdrawal of the guilty plea under the fair and just standard." *Gooding v. United States,* 529 A.2d 301, 307 (D.C.1987). None of these factors is controlling; all must be considered cumulatively in determining whether withdrawal of the plea would be "fair and just." *Pettiford,* 700 A.2d at 216. Whether a defendant has met the standard is left to the sound discretion of the trial court, and the court's decision will not be disturbed absent an abuse of that discretion. *Binion v. United States,* 658 A.2d 187, 190 (D.C. 1995); *United States v. Cray,* 310 U.S.App. D.C. 329, 334, 47 F.3d 1203, 1208 (1995) (holding that, where no Rule 11 error occurred, appellate court "extremely reluctant" to find abuse of discretion in trial court's denial of motion to withdraw guilty plea, and that appellant must meet "extremely heavy burden" to prevail).

As to the first criterion, we note that, in his motion to withdraw guilty plea, appellant asserted his innocence by claiming "that he was the victim of mis-identification." This statement, however, was not supported by proffered facts that would "make out some legally cognizable defense" of misidentification, *id.* at 192, and nothing is made of this point in appellant's brief on appeal. Moreover, we agree with the government that the misidentification claim is especially weak, because the government's proof that appellant committed the crimes was based not on any photographic or eyewitness identification, but on admissions that appellant made to a witness, coupled with DNA evidence which showed that blood from a shirt in evidence

matched appellant's, and that the chances of the DNA belonging to another person were one in 1.5 billion. Appellant's claim of innocence, therefore, is unsubstantiated.

Next, appellant relies on the brief twenty-six-day delay between his plea and his letter to the judge attempting to withdraw the plea. The government argues, to the contrary, that a delay of more than three weeks in attempting to withdraw the plea reveals that the plea had not been the product of "haste or confusion." *Id.* at 191. The government relies on *Bennett v. United States,* 726 A.2d 156, 169–70 (D.C. 1999), and on *Springs v. United States,* 614 A.2d 1, 7–8 (D.C.1992), in which we agreed that a three-week delay between plea and attempt to withdraw cut against appellants. We agree that *Bennett* and *Springs*—in contrast with the delay of but a few days in *Gooding,* for example—support the government.

Finally, it is unclear whether appellant still asserts incompetence of counsel, for although he relied on this contention before the trial court, his brief on appeal does not repeat the challenge. In any event, in none of appellant's pleadings does he offer factual bases demonstrating that counsel's performance was deficient or that, assuming deficiency, appellant was prejudiced by that performance. *Southall v. United States,* 716 A.2d 183, 189 (D.C. 1998) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

## III.

■ The catch-all grouping for "other factors" that might compel allowance of a plea withdrawal as "fair and just," *Gooding,* 529 A.2d at 307, brings us to appellant's reliance on the prosecutor's alleged violation of the plea agreement. The trial judge found no "fair and just" reason to allow withdrawal. He concluded that the government had not violated the plea agreement because it had not specifically requested a sentence in excess of the forty-five-years-to-life sentence agreed upon.

We cannot agree with the trial court's conclusion. As the government concedes in its brief, it breached its plea agreement with appellant:

> [the government] agrees with appellant that, in context, the prosecutor's emphasis on the seriousness of the offenses and the viciousness of the defendant, his reference to the fact that the court was not bound by the plea agreement, his failure to recommend a sentence of 45 years to life, and his request, instead, that the court "impose a sentence that reflects the seriousness of this particular offense" did not "meet a standard of strict compliance" with the plea agreement. *White v. United States,* 425 A.2d 616, 618 (D.C.1980) (noting, in determining whether the government has breached a plea agreement, that the court "will construe any ambiguity against the government"); *see also Santobello v. United States,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Snipes v. United States,* 507 A.2d 159, 162 (D.C.1986).

The government did more than simply remain silent at appellant's sentencing; in practical effect, the government actively sought a more severe sentence than the one it had agreed to recommend. For whatever reasons, moreover, the court imposed a more severe sentence. The question, then, is whether the government's breach of its agreement makes it fair and just to allow appellant to withdraw his plea? Or is another remedy available?

In arguing that the only appropriate remedy is an order allowing him to withdraw his plea, appellant relies on *Roye v. United States,* 772 A.2d 837, 839 (D.C. 2001), where this court, after finding that

the government had violated a plea agreement, ordered vacation of the sentence and withdrawal of the plea for two reasons. First, the "value of the plea bargain had changed" because, by the time the appeal was heard, Roye had served substantially more time in prison than he would have served under an agreement whereby the government should have recommended incarceration only for time served as of the time of trial. *Id.* at 840. Second, specific enforcement of the plea agreement, namely, remand for resentencing under the plea agreement by a different judge, would have been unsatisfactory, for even a second judge, who inevitably would become aware of the government's original allocution and the sentence imposed by the first judge (if only from the appellate opinion itself), could not altogether avoid taint from the government's violation. *Id.* at 840–41.

This case is a bit different from *Roye*, in that the full value of appellant's bargain with the government remains available to him, for he has served but a fraction of the sentence which he and the government both agreed to seek. On the other hand, as in *Roye*, specific performance of the plea agreement in a new sentencing proceeding before a different judge would not erase the taint recognized in *Roye*. The question then, given this taint, is whether *Roye* would justify, if not mandate, withdrawal of appellant's plea; or whether specific performance—or some remedy between specific performance and withdrawal of the plea—should be preferred here.

■ "[D]ue process of law demands that 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'... If the promise cannot be fulfilled, and the deviation is material, the waiver of constitutional rights that a guilty plea represents is invalidated and cannot be enforced." *Id.* at 841 (quoting *Santobello*, 404 U.S. at 262, 92 S.Ct. 495). In this case, as in *Roye*, the appellant waived his constitutional rights and pled guilty in exchange "for a 'clean' government recommendation ..., not a recommendation qualified by a disclosure that the government had—and may still have—misgivings ... and 'really' sought—and may still seek—something else." *Roye*, 772 A.2d at 840. The difference between the two prosecutorial stances is material. Hence, as in *Roye*, here too the appellant cannot be compelled to accept imperfect specific performance against his will.

Thus, but for an unusual feature of this case, we would hold that appellant "is entitled to withdraw his plea if that is what he wishes to do." *Id.* at 841. But, as the government urges, there is an unusual feature of this case that makes an alternative remedy possible. Under the plea agreement, appellant and the government *both* agreed to ask the court for a sentence of forty-five years to life imprisonment. Had that agreement been carried out, appellant would have had no expectation of receiving any lesser sentence. If, therefore, the court on remand chooses to impose a sentence no greater than the sentence that the parties themselves mutually agreed to request, appellant will receive the full benefit of his bargain.[8] Emphasizing that appellant can have no right to withdraw his

---

8. If appellant had not agreed to join in the government's request for a specific sentence, the imposition on remand of no greater sentence would not be an adequate remedy for the government's breach, because in that case appellant could have harbored the hope that the court would impose something less than what the government was supposed to request. Appellant could not have retained such a hope, however, when he agreed to join in the government's request.

plea if he can obtain all he says he was promised, *see id.* at 840, the government asks us to direct the court on remand to impose the sentence contemplated in the plea agreement. *See id.* at 840 n. 2, quoting *United States v. Bowler,* 585 F.2d 851, 856 (7th Cir.1978) ("Appropriate relief can include ... ordering the imposition of a specific sentence where withdrawal of a guilty plea or specific performance by the Government would be either meaningless or infeasible.")

There is merit to the government's proposal, but we do not think it appropriate or necessary for us to tell the trial court how it must exercise its sentencing discretion in order to remedy the government's breach. The trial court would not have been obligated to follow the government's recommendation even if the government had lived up to its agreement. Instead, we think the proper course is to rule that on remand, appellant may withdraw his guilty plea unless the trial court, after hearing from the parties on the question, chooses on its own to impose a sentence that is no greater than what the parties agreed to request. In making this ruling, we are not directing a specific sentence or intruding on the trial court's prerogatives. We simply are affording the trial court a way to remedy the government's breach of its plea bargain that is an adequate alternative to allowing appellant to withdraw his plea. The choice is up to the trial court.[9]

*So ordered.*

RUIZ, Associate Judge, dissenting in part:

Although I agree with the majority that there is no basis for us to direct that appellant's guilty plea be withdrawn, I disagree with its remedy for the prosecutor's failure to abide by the terms of the plea agreement because it unnecessarily interferes with the trial court's broad discretion in sentencing and gives appellant more than he was entitled to under the agreement.

As an appellate court, we generally have no authority to direct the trial court to impose a particular sentence. *See Rider v. United States,* 687 A.2d 1348, 1353 n. 10 (D.C.1996) ("We have long recognized that the trial court has broad discretion in matters of sentencing.") (citations omitted). Nor may we, in my estimation, restrict the trial court, as the majority does, from imposing an aggregate minimum sentence beyond a certain number of years when such a sentence is permissible under the statutes that prescribe sentencing ranges for the relevant offenses. *See id.* ("Appellate review of sentencing is extremely limited [as] this court ordinarily will not set aside a sentence that is within the limits set by the statute.") (citations omitted); *Williams v. United States,* 571 A.2d 212, 214 (D.C.1990) (same). That the majority's remand order effectively imposes a

9. We note that one of the crimes to which appellant pled guilty was *unarmed* assault with intent to kill (AWIK). The maximum sentence authorized for AWIK is *five to fifteen years*. *See* D.C.Code § 22–501 (1996), now codified at D.C.Code § 22–401 (2001). At sentencing, however, the trial court imposed a sentence of *fifteen years' to life imprisonment,* apparently under the mistaken impression that the charge was AWIK *while armed.* *See* D.C.Code §§ 22–501, –3202 (1996), now codified at D.C.Code §§ 22–401, –4502 (2001). Although appellant does not raise

this discrepancy on appeal, the government calls the illegality to our attention, recommending that it be corrected on remand. If the trial court had sentenced appellant correctly, the total aggregate sentence presumably would have been forty-eight, not fifty-eight, years to life in prison. We are confident that if the trial court elects on remand to resentence appellant in accordance with this opinion in lieu of permitting him to withdraw his guilty plea, it will impose a legally correct sentence.

cap on the trial court's broad discretion in sentencing is evident in this case where the 45–year aggregate minimum sentence the trial court is permitted to impose on remand is less than the aggregate minimum sentence that the trial court actually imposed when it considered the matter free from appellate · court intervention. See *ante* at footnote 9.[1]

Beyond the intrusion into the trial court's domain, the majority's remand order is unnecessary to cure the government's breach because it overcompensates appellant. Parties to a plea agreement that includes a sentencing recommendation to a judge know that the sentencing judge is not bound by the plea agreement. To restrict the trial court to a sentence that does not exceed what the parties agreed to recommend, thus provides, as a remedy for breach, more than the parties bargained for. *See United States v. Bowler*, 585 F.2d 851, 856 (7th Cir.1978) ("[T]o order that the sentences imposed upon the defendant be made to run concurrently would be to grant the defendant more than was promised in the plea agreement and would be an unnecessary intrusion into the district court's sentencing function.")

While the government, as the breaching party, is ill-positioned to complain if appellant receives a windfall, the majority's remedy affects not only the government, but the broader public interest in balancing punishment, rehabilitation and deterrence that is the purview of the sentencing judge's discretion. To be sure, a plea agreement is a contract to which the parties are bound, and its breach merits a

cure. *See Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Sentencing, however, is not a private matter between the prosecutor and the defendant, but a public function in which a trial judge exercises authority vested by the legislature. It cannot be claimed as a prize or used as a sanction for breach of a plea agreement. Thus, I am not persuaded by the majority's reliance on the "unusual" feature of the plea agreement before us. That both parties agreed to make the same recommendation to the trial court does not divest the trial judge of sentencing discretion.

Where the government has breached its promise under a plea agreement, the court must determine "whether the circumstances ... require only that there be specific performance of the agreement on the plea, ... or whether ... circumstances require granting ... the opportunity to withdraw [the] plea of guilty." *Santobello*, 404 U.S. at 263, 92 S.Ct. 495. We have recognized that the preferred remedy in this kind of situation is specific performance of the plea agreement. *See Roye v. United States*, 772 A.2d 837, 839–840 (D.C. 2001). In *Roye*, we did not order specific performance, but allowed the defendant to withdraw his guilty plea following the government's breach of the plea agreement because (1) the value of the plea bargain for Roye had changed, as he had negotiated for a sentence limited to time served but, by the time of his appeal, had served more than four years in prison; and (2) remanding the case to a different sentencing judge who would have access to the

---

1. I do not think that the fact that the remand order allows the judge to permit withdrawal of the plea adds meaningfully to the trial court's discretion in this case, when we, on appeal, have concluded that withdrawal of the plea would be required *unless* the trial court imposes a sentence "no greater than" the 45 year sentence that the parties agreed

upon. Viewed against the backdrop of the trial court's rejection of the request to withdraw the plea, which we affirm, and the aggregate minimum sentence it imposed, which exceeded 45 years, the discretion on the face of the remand order is illusory. The remand order for all practical purposes imposes a specific sentence.

government's original recommendation against Roye's release (in breach of the plea agreement) would not provide the "clean" government recommendation that he had bargained for. *See id.* The majority acknowledges that this case is different from *Roye,* because here it is still possible for appellant to realize the full value of his bargain—and so withdrawal of the plea is not required—but goes on to state that the danger of potential "taint" in remanding the case to a different resentencing judge *alone* makes specific performance impossible. See *ante* at page [11–12]. Even assuming that the second stated basis for the decision in *Roye* (the taint) is not dicta, the majority's ruling in this appeal goes beyond *Roye* by effectively abrogating the remedy of specific performance whenever the government affirmatively breaches a plea agreement that requires the government to take a certain posture before the judge, as the possibility of taint will always exist upon remand for resentencing if the government has voiced a sentencing recommendation in excess of what it agreed to in the plea bargain.

I would remand the case with instructions to hold a new sentencing hearing before a different judge at which the parties perform as agreed in the plea agreement. I recognize that resentencing is an inefficient mechanism, and may not be perfect in curing the breach. It is inefficient because, in order to mitigate the potential taint that could influence the sentencing judge on remand, it is preferable to recruit a second judge who must become familiar with the case.[2] It is possibly an ineffective one because of the reality that even a second judge could be influenced by knowing what the government "really" thinks the sentence should be, *see id.,* as well as

by knowing (and deferring to) the sentence imposed by the judge who sat through the trial. These difficulties, however, do not justify our reaching beyond what is necessary to address the breach. But they should act as a caution to the government that breach of its plea agreements not only dishonors the government, *see United States v. Lezine,* 166 F.3d 895, 901 (7th Cir.1999), but also imposes real costs on the judicial system. Most importantly, the judge on remand must act solely within the parameters of the resentencing hearing. This may be difficult, but not any more so than other tasks demanded of trial judges who are asked, for example, to set aside and not consider in fact-finding inadmissible evidence they have heard in a bench trial. Sentencing judges always know, moreover, that a plea bargain is just that, a bargain, and that the government in all likelihood would prefer a greater offense and stiffer sentence. They also understand, however, that such bargains play a role in the system and that they merit thoughtful consideration by the bench. See *Santobello,* 404 U.S. at 261, 92 S.Ct. 495. Unless the resentencing judge is unable to conduct the resentencing proceeding according to the plea bargain, such that the government's promise "cannot be fulfilled," *Roye,* 772 A.2d at 841, the *possible* taint to which we alluded in *Roye,* is by itself insufficient to discard the preferred remedy in the first instance where it has not been shown to be "meaningless or infeasible." *Bowler,* 585 F.2d at 856 (citing *Correale v. United States,* 479 F.2d 944, 950 (1st Cir.1973)). If, ultimately, that remedy proves to be impossible, appellant should be allowed to withdraw his plea. See *Santobello,* 404 U.S. at 263, 92

**2.** See *Santobello,* 404 U.S. at 263, 92 S.Ct. 495; *United States v. Wolff,* 326 U.S.App. D.C. 416, 420, 127 F.3d 84, 88 (1997) (listing factors to be considered in deciding whether reassignment to a different judge is necessary); *id.* at 422, 127 F.3d at 90 (Randolph, J., dissenting) (determining that reassignment should be ordered in every case).

S.Ct. 495; *Bowler*, 585 F.2d at 856. But I would not so readily give up on specific performance of the plea agreement.

