*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CF-1077

ALVIN N. JACKSON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CF1-005871)

(Hon. Anthony C. Epstein, Motions Judge)

(Submitted May 1, 2025                        Decided February 19, 2026)

*Steven R. Kiersh* for appellant.

*Matthew M. Graves*, United States Attorney at the time the brief was filed, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Gauri Gopal*, and *Kevin Birney*, Assistant United States Attorneys, were on the brief for appellee.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

BECKWITH, *Associate Judge*: Alvin Jackson pled guilty to one count of assault with a dangerous weapon and one count of assault with intent to kill while armed. The parties agreed to a sentence of twelve years' incarceration, and because the plea agreement was entered pursuant to Rule 11(c)(1)(C), the court was bound to accept

that sentence recommendation if it accepted the plea agreement. *See* Super. Ct. Crim. R. 11(c)(1)(C).

Less than two months later, before he was sentenced, Mr. Jackson filed a motion to withdraw the guilty plea. At the motion hearing, one of Mr. Jackson's lawyers—Tammy Strange Jacques—testified that, during a jailhouse meeting with Mr. Jackson, his other lawyer—Euphus Belu-John—incorrectly told Mr. Jackson that he would be able to talk the judge down from the twelve-year sentence to an eight-year sentence. Mr. Jackson's wife testified that Mr. Belu-John had told her and her family the same thing. Mr. Belu-John denied making such statements.

The trial court credited Ms. Jacques over Mr. Belu-John, finding that she was "direct, forthright, and consistent in her testimony" and "had no incentive or motive to mischaracterize" the events. The trial court nonetheless concluded that, although Mr. Jackson did not have the benefit of competent legal counsel at all times, Mr. Jackson failed to show that he would not have taken the plea but for Mr. Belu-John's inaccurate advice. The trial court denied Mr. Jackson's motion and he appealed.

A motion to withdraw a guilty plea prior to sentencing may be granted if "justice demands withdrawal under the circumstances of the case." *Long v. United States*, 169 A.3d 369, 374 (D.C. 2017) (quoting *Maske v. United States*, 785 A.2d 687, 693 (D.C. 2001)). Presentence motions to withdraw are "regarded more

leniently" than post-sentence motions and are "given favorable consideration 'if for any reason the granting of the privilege seems fair and just.'" *White v. United States*, 863 A.2d 839, 841 (D.C. 2004) (quoting *Springs v. United States*, 614 A.2d 1, 4 (D.C. 1992)). As a result, presentence requests to withdraw a plea "should be freely allowed." *Pettiford v. United States*, 700 A.2d 207, 216 (D.C. 1997) (quoting *Gooding v. United States*, 529 A.2d 301, 306 (D.C. 1987)).

A trial court must consider three factors under this standard: (1) "whether the defendant has asserted his or her legal innocence," (2) "the length of the delay between the entry of the guilty plea and the desire to withdraw it," and (3) "whether the accused has had the full benefit of competent counsel at all relevant times." *Edwards v. United States*, 295 A.3d 1125, 1131 (D.C. 2023) (quoting *Springs*, 614 A.2d at 4). Because no single factor is dispositive, the court "must consider them cumulatively in the context of the individual case." *Springs*, 614 A.2d at 4 (quoting *Gooding*, 529 A.2d at 306). Whether to allow withdrawal of a guilty plea "is left to the sound discretion of the trial court and reversal will be required only upon a showing of abuse of discretion." *Id.*

Mr. Jackson contends that he should have been permitted to withdraw his guilty plea because Mr. Belu-John was ineffective when he misinformed Mr. Jackson about the length of his sentence. *Cf. Edwards*, 295 A.3d at 1136-37 (holding

that counsel's "misunderstanding of case law" and "resulting significant misadvice" to the defendant, among other things, demonstrated incompetence under this factor). Although the trial court found that Mr. Belu-John did make statements about being able to decrease the twelve-year sentence in the plea agreement, that these statements were "incorrect or at least misleading," and that Mr. Jackson therefore did not have the benefit of competent counsel at all times, the court concluded that this factor weighed against Mr. Jackson because he did not demonstrate, under *Strickland v. Washington*, 466 U.S. 668 (1984), that there was "a reasonable probability that Mr. Belu-John's incorrect advice caused him to accept the plea offer."[1]

But "prevailing under the 'justice-demands-withdrawal' standard does not require a strict showing that counsel's deficient performance was prejudicial—particularly in the case of a presentence withdrawal motion." *Edwards*, 295 A.3d at 1139 n.23; *see Pettiford*, 700 A.2d at 216 ("When evaluating a presentence motion

---

[1] The government at the trial level and on appeal does not contest that Mr. Belu-John's advice, if it was given, was deficient, and the government also does not assert that the trial court's choice to credit Ms. Jacques over Mr. Belu-John on this issue was erroneous. Instead, the government asserts that any harm caused by Mr. Belu-John's ineffective counsel was addressed by the trial court's plea colloquy with Mr. Jackson. But "as a number of courts have observed, 'the court's performance at the plea colloquy is simply irrelevant to the question whether *counsel's* performance fell below an objective standard of reasonableness.'" *Barrie v. United States*, 279 A.3d 858, 864 (D.C. 2022) (brackets omitted) (quoting *United States v. Rodriguez-Vega*, 797 F.3d 781, 787 (9th Cir. 2015)).

to vacate a guilty plea, we consider the competency of appellant's counsel as one of the factors, but we have never required a showing of prejudice as found in *Strickland*.").[2] The trial court therefore erred in concluding that Mr. Jackson did not satisfy factor three because he failed to demonstrate *Strickland* prejudice. *See, e.g.*, *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024) (holding that a trial court abuses its discretion when it fails to consider a relevant factor, rests its decision on an improper factor, gives reasons that do not support its conclusion, or "makes an error of law").

The deficiency of Mr. Jackson's counsel must be considered in conjunction with the other two factors. As to legal innocence, the trial court found that Mr. Jackson had not asserted his legal innocence, and the record supports that finding.[3] As to delay, Mr. Jackson told his attorneys of his desire to withdraw the plea within

---

[2] A case that postdates *Pettiford* by a few months, *Pierce v. United States*, 705 A.2d 1086 (D.C. 1997), states that a defendant must show that the deficient counsel "motivated his plea," relying on a case focused on a post-sentence plea. *Id.* at 1094 (quoting *Williams v. United States*, 595 A.2d 1003, 1006 (D.C. 1991)). Because *Pettiford* is the earlier decision on the matter, we are bound by it. *See D.C. Metro. Police Dep't v. D.C. Pub. Emp. Rels. Bd.*, 282 A.3d 598, 603 (D.C. 2022) ("[W]e are bound to follow our earlier decisions to the extent there is any inconsistency between them and our later decisions.").

[3] Although Ms. Jacques testified at the hearing that "self-defense was available" as an affirmative defense to one of the two counts, Mr. Jackson did not point to any facts that, if accepted as true, would "make out some legally cognizable defense to the charges." *Edwards*, 295 A.3d at 1131 & n.7 (quoting *Springs*, 614 A.2d at 5).

a few days of pleading, and the government conceded that "the facts are clear that this was a prompt withdrawal."[4] The government states that it "does not rely on" the delay factor on appeal, and we see no prejudice to the government's interests from what short delay there was.

Because the trial court misapprehended one of the three factors that it was required to weigh in addressing Mr. Jackson's presentence request to withdraw his guilty plea, and because this error could in turn affect how the court rules on the motion, we vacate the court's ruling on the motion and remand to allow the court to reassess, consistent with this opinion, whether justice demands that Mr. Jackson be permitted to withdraw his plea. *See, e.g.*, *Johnson v. United States*, 398 A.2d 354, 366-67 (D.C. 1979) (explaining that if the trial court error "had a possibly substantial

---

[4] The "delay" is measured as the time between the day of the plea and the "first record evidence" of Mr. Jackson's desire to withdraw it. *Edwards*, 295 A.3d at 1135 (quoting *White*, 863 A.2d at 844) (considering record evidence that, weeks before the actual filing of the motion, the defendant had met with his lawyer and requested to withdraw his plea); *see Gooding*, 529 A.2d at 310-11 (analyzing the dayslong delay between the plea and the "expression of appellant's desire to withdraw it" rather than the two-month delay between the plea and the formal motion to withdraw). Here, credited testimony from Ms. Jacques established that (a) "[i]mmediately" after the plea on April 20, "in the back" of the courtroom, Mr. Jackson told her that he was "not happy with what just happened," (b) on April 23 or 24, Mr. Jackson's family called Ms. Jacques requesting that she go speak with Mr. Jackson because "[h]e wants to withdraw that plea," and (c) on April 25, she met with Mr. Jackson in the jail and he "was adamant that he wanted to withdraw the plea" and "asked Mr. Belu-John to file a motion to withdraw the plea."

impact upon the outcome, the case should be reversed").

*So ordered.*