Michael LOUIS, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–1334, 03–CO–945.

District of Columbia Court of Appeals.

Submitted Nov. 16, 2004.

Decided Dec. 2, 2004.

Paul J. Riley, Washington, DC, for appellant.

Edward A. O'Connell, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Daniel M. Cisin, Assistant United States Attorneys, were on the brief for appellee.

Before REID and GLICKMAN, Associate Judges and NEWMAN, Senior Judge.

REID, Associate Judge:

Appellant Michael Louis entered an *Alford* plea,[1] to a single count of first-degree sexual abuse in violation of D.C.Code § 22–4102(2) (1996).[2] During sentencing proceedings, the trial judge imposed a sentence of eight to twenty-four years of incarceration. Subsequently, Mr. Louis filed a motion under D.C.Code § 23–110 (2001) to set aside the judgment of conviction and to withdraw his guilty plea. The trial court denied his motion. We affirm the trial court's judgment of conviction, and its denial of Mr. Louis' post-conviction motion.

## FACTUAL SUMMARY

On July 28, 1999, the government filed a five-count indictment charging appellant with first-degree burglary, in violation of D.C.Code § 22–1801(a),[3] three counts of first-degree sexual abuse in violation of

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his partic-ipation in the acts constituting the crime.") *Id.* at 37, 91 S.Ct. 160.

2. Recodified at D.C.Code § 22–3002(a)(2) (2001).

3. Recodified at D.C.Code § 22–801(a) (2001).

D.C.Code § 22–4102(2),[4] and assault with intent to commit first-degree sexual abuse in violation of D.C.Code §§ 22–501 and 22–4102(1).[5] On September 28, 1999, the court declared a mistrial after the jury was unable to reach an unanimous verdict.

On October 15, 1999, Mr. Louis entered an *Alford* plea to a single count of first-degree sexual abuse and the government agreed to "dismiss all other indicted offenses," "reserve step back," "waive any applicable enhancements, and agree[d] not to allocute for more than five to fifteen years of incarceration." During the plea hearing, the trial judge told Mr. Louis that the plea agreement "[was] not binding on [him] and [that the court] could decide to impose a sentence as high in this case ... as fifteen years to life in prison." The plea agreement reduced Mr. Louis' "maximum/minimum exposure from something in excess of fifty-five years to no more than fifteen years." Although Mr. Louis entered a guilty plea he denied guilt and stated that he "was under the influence [when the events took place]."

The government asserted that if the case went to trial its evidence would:

[P]rove beyond a reasonable doubt that on the afternoon of May 14, 1999, the victim, Ms. [Eu]lalia Fender, was living at 1305/1307 Irving Street, Northwest, here in the District. That's a group home at which she lived for approximately 11 years. She was 67 years old at the time. She had a diagnosis quite sometime ago of schizophrenia. And that afternoon at that time she was up in her third floor room by herself when the defendant appeared inside her room. He demanded that she engage with sex— in sex with him. He put his penis in her vagina numerous times against her will. She was telling him no.

He was telling her that if she didn't submit to sex with him he would kill her. He was choking her and pressing on the area of her heart and put her in fear for her life, based on what he was doing and what he said he would do if she didn't submit. He also engaged her in anal intercourse and an act of felattio, also against her will.

When he was going to try to penetrate her vaginally again, she was able to get out of her room, go out into the hallway where she started screaming. At that point two other men who worked at the home came running upstairs. Ms. Fenner was pointing in her room saying he raped me. The two men saw the defendant inside her room in the process of fixing his pants.

The men caught Mr. Louis, brought him downstairs and held him there until the police arrived, at which point Ms. Fenner again identified the defendant as the person who had raped her.

Subsequently, the court determined that this case was "an appropriate case for an *Alford* plea, notwithstanding Mr. Louis' position on [the] matter."

On February 18, 2000, the government submitted a seventeen-page memorandum in aid of sentencing which described the underlying facts of the sexual abuse, defendant's history, and the effects of this crime on the victim. In the memorandum the government recommended that the court sentence Mr. Louis to five to fifteen years imprisonment. In addition, the government submitted a Victim Impact Statement prepared by Eulalia Fenner and a letter prepared by Victim Witness Advocate Maria Shumar which described "the emotion and physical trauma caused by defendant's sexual abuse and Mrs. Fenner's daily struggle to recover a life

---

4. Recodified at D.C.Code § 22–3002(a)(2) (2001).

5. Recodified at D.C.Code §§ 22–401 and 22–3002(a)(1) (2001).

shattered by defendant's actions." On September 21, 2000, appellant's case came before the court for sentencing. Consistent with its plea agreement, the government allocuted for a sentence of five to fifteen years of incarceration. However, the court imposed a sentence of eight to twenty-four years after considering the "seriousness[,] . . . heinousness, [and] brutality of [the] offense. . . ." Moreover, the court imposed court costs amounting to $5000.00. Mr. Louis filed a timely appeal.

On September 29, 2000, Mr. Louis filed a *pro se* "Motion of Recommendation to be Resentence (sic) Under Rule 35." The court denied the motion on January 12, 2001. On May 2, 2003, he filed a "Motion Under D.C.Code § 23–110 and Super. Ct. Crim. R. 32(e) to Set Aside Judgment of Conviction and to Permit Defendant to Withdraw his Plea and Points and Authorities in Support Thereof." On July 10, 2003, the court denied his motion and on August 15, 2003, Mr. Louis filed a timely notice of appeal of the order.

## ANALYSIS

Mr. Louis argues that the trial court abused its discretion when it denied his "motion to set aside judgment and conviction and to remand the case for re-sentencing because of the government's failure to honor the plea agreement." Specifically, he argues that the government's allocution recommending a sentence of five to fifteen years was improperly executed because it included a description of the events "that went way beyond the conduct which was the subject of the sentencing." Further, appellant asserts that the seventeen-page memorandum in aid of sentencing that was submitted by the government went well "beyond the pale of what the voice of the government is expected to do to meet its bargain."

The standard of review for a trial court's denial of a post-sentencing motion

to withdraw a guilty plea is abuse of discretion. *See Springs v. United States,* 614 A.2d 1, 4 (D.C.1992); *see also Byrd v. United States,* 801 A.2d 28, 30 (D.C.2002) ("[T]he [trial] court's decision will not be disturbed absent an abuse of discretion."). However, this court never has articulated the standard of review for a trial court's denial of a motion to withdraw a guilty plea based on the alleged breach of a plea agreement. The D.C. Circuit "interprets the terms of the plea agreement *de novo* and . . . review[s] the [trial court's] factual findings regarding alleged breaches of the plea agreement for clear error." *United States v. Gary,* 351 U.S.App.D.C. 380, 383, 291 F.3d 30, 33 (2002) (citations omitted); *see also United States v. Bowe,* 257 F.3d 336, 342 (4th Cir.2001) ("We review a claim that a party has breached a plea agreement under a bifurcated standard, reviewing the [trial] court's factual findings for clear error, while reviewing the [trial] court's application of principles of contract interpretation *de novo*.") (quoting *United States v. Snow,* 234 F.3d 187, 189 (4th Cir.2000)). We conclude that the standard followed by the D.C. Circuit and the Fourth Circuit is an appropriate one and therefore adopt it.

"The government has a duty to fulfill its promises in a plea bargain." *White v. United States,* 425 A.2d 616, 618 (D.C.1980). "The government must meet a standard of strict compliance with its agreement." *Id.* at 618 (citations omitted). "If the government violates its bargain, it is irrelevant that the government's remarks may not have influenced the sentencing judge; the court must remand the case for resentencing or, in appropriate cases, to allow withdrawal of the defendant's plea." *Id.* (citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). This court construes any ambiguity against the government. *Id.* (citations omitted). But, a defendant bears the burden of showing that a plea

agreement has been breached. *See United States v. Ahn,* 343 U.S.App.D.C. 392, 402, 231 F.3d 26, 36 (2000).

■ In the instant case the government fulfilled its promise to appellant. The government recommended to the sentencing judge a term of five to fifteen years of incarceration as agreed. In its sentencing memorandum, "the government recommend[ed] that the Court sentence [Mr. Louis] to five (5) to fifteen (15) years." Furthermore, in its allocution the prosecutor stated that Mr. Louis "more than warrants the five to fifteen years the Government agreed to let him out," and later asserted "I don't see how the Court can do anything but impose the five to fifteen years." The request for a sentence of five to fifteen years was in strict compliance with the plea agreement. Mr. Louis' reliance on *Byrd v. United States,* 801 A.2d 28 (D.C.2002) is unavailing. There, unlike this case, the government conceded that "the prosecutor's emphasis on the seriousness of the offenses and the viciousness of the defendant, his reference to the fact that the court was not bound by the plea agreement, his failure to recommend [the agreed upon] sentence, and his request, instead, that the court 'impose a sentence that reflects the seriousness of this particular offense' did not 'meet a standard of strict compliance with the plea agreement.'" *Id.* at 33 (citation omitted). The government's description of the alleged events in this case was presented to ensure that Mr. Louis received the maximum amount of incarceration the plea agreement would allow, especially in light of Mr. Louis' request for probation in his own sentencing memorandum.[6] However, the government did not actively pursue a longer sentence than the plea agreement warranted. Instead, the trial court determined that the

> maximum sentence the government [ ] agreed upon here so substantially deprecates the seriousness of this offense that ... I'm going to impose a sentence very substantially less than the sentence I would have imposed had it not been for the agreement because I believe that Mr. Louis is entitled to some advantage from the agreement. But, I believe the minimum sentence in this case that recognizes the seriousness ... the heinousness, the brutality of this offense is a sentence of eight to twenty-four years.

In short, we are satisfied that the government met the "standard of strict compliance with its agreement."

Accordingly, for the foregoing reasons, we affirm the trial court's judgment of conviction, and its denial of Mr. Louis' post-conviction motion.

*So ordered.*

---

6. Mr. Louis' August 10, 2000, memorandum in aid of sentencing stated in part: "The United States has filed a memorandum in aid of sentencing in which it requests the court to impose the five to fifteen year sentence. Mr. Louis requests the court to suspend part or ... all [of] this sentence and place him on probation ...."