**Gregory T. ABBOTT, Appellant**

v.

**UNITED STATES, Appellee.**

**Nos. 03–CO–492, 03–CO–493, 03–CO–495, 03–CO–496, 03–CO–498, and 03–CO–499.**

District of Columbia Court of Appeals.

Argued Feb. 12, 2004.

Decided April 7, 2005.

---

Frederick J. Sullivan, appointed by the court, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Alexia Pappas, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and FERREN, Senior Judge.

TERRY, Associate Judge:

Gregory Abbott appeals from the denial of his post-sentence motion to withdraw his guilty pleas in six related cases. On appeal he contends that the prosecutor's remarks at the sentencing hearing did not meet a standard of strict compliance with the plea agreement. He argues that "[w]hile not explicitly asking for incarceration greater than four years, the government implicitly suggested that it favored a greater sentence" when the prosecutor summarized the charges against him and recommended "a significant period of incarceration." We affirm the denial of appellant's motion because the government was entitled to explain its recommendation and because appellant has not shown manifest injustice.

I

On May 29, 2002, appellant was charged with seventeen counts of distributing cocaine, sixteen of them alleging distribution

within a drug-free zone.[1] These charges arose from eight different drug sales in the Dupont Circle area of Northwest Washington between July 2001 and February 2002. Appellant, along with other persons who were later arrested, had been under surveillance by Metropolitan Police officers from the Third District for approximately nine months as part of an undercover drug investigation in Dupont Circle known as "Operation Gold Coast." On September 6, 2002, appellant pleaded guilty to seven counts of distributing cocaine. In exchange, the government agreed to dismiss all the remaining counts, to waive the drug-free school zone sentencing enhancements, and to limit its allocution to recommending a total of four years' incarceration for all the counts to which appellant pleaded guilty.

During the plea hearing,[2] the court asked the prosecutor if there was a cap on allocution, and the prosecutor replied, "Yes, four years." Later in the hearing, the court asked appellant, "Has anybody promised you what my sentence would be if you did plead guilty?" Appellant responded, "No, ma'am." The court then explained to all three defendants:

> Every one of you has got a deal with the government that they're not going to ask for more than a certain amount of time. Please be very, very clear, I'm not in on that deal. If I think any one or all of you should get all thirty years—actually, the most you can get at the beginning is twenty-seven years, that's

exactly what I'm going to give you. Do you understand that?

Appellant answered, "Yes, ma'am," as did each of his co-defendants.

At appellant's sentencing a few weeks later,[3] the prosecutor made the following statement:

> Your Honor, to use defense counsel's language, the government was in a sense following Mr. Abbott around, and ... they were watching Dupont Circle, as you know, for an extended period of time. We were also making purchases from others, and those others did not have seven separate cases, twelve separate cases, fourteen separate cases. This defendant really made a lot of sales. He is different from most of the defendants in the Gold Coast operation, if you will. And he has pled guilty to seven separate distribution counts in six separate felony cases. We capped our allocution for this defendant higher than all of the others, I believe, except for one, that are before Your Honor, with a four-year allocution cap.
>
> The defendant has had the benefit of probation.... [A]nd what was he doing on that probation? We know what he was doing. He was selling drugs in Dupont Circle, and he should receive a significant period of incarceration.

Defense counsel responded:

> As the court knows, the government did cap their allocution to four years. They weren't going to ask for more than four. And the only rebuttal that I can

---

1. Under D.C.Code § 48–904.07a (a) (2001), "all areas within 1000 feet of a public or private ... school" are declared to be "drug-free zone[s]." Under subsection (b) of the same statute, anyone who distributes a controlled substance within a drug-free zone is subject to an enhanced penalty up to twice any fine or term of imprisonment otherwise authorized by law.

2. In addition to appellant, two co-defendants also entered guilty pleas at the same hearing, but they are not parties to this appeal.

3. The same judge conducted the hearing on appellant's plea and his sentencing. Therefore the judge was aware at sentencing that the government was recommending a total of only four years' incarceration for appellant.

make to what the government says, and I think it's a legitimate rebuttal, is that the guy that's—this court knows the guy that's on the firing line making the hand-to-hand sales, he's the lowest man on the totem pole.[4]

After further discussion, the court sentenced appellant to a total of seventeen years' incarceration, to be followed by five years of supervised release.[5]

Three weeks later appellant filed a motion for reduction of sentence, which the court denied in a written order.[6] Appellant then filed a "Request for Reconsideration of Order Denying Motion for Reduction of Sentence Or, In the Alternative, Motion to Withdraw Guilty Plea,"[7] in which he argued for the first time that "the government's allocution went beyond requesting the sentencing cap of four years." Appellant later filed a supplement to his second motion, in which he asserted:

> While barely mentioning "a four year allocution cap" (which is buried in the remaining verbiage), the government urged upon the court that Mr. Abbott receive a "significant period of incarceration" for his extensive drug dealing in Dupont Circle. A significant period of

incarceration for a defendant on seven counts of distribution with a maximum penalty in excess of 200 years cannot be interpreted as up to four years. . . .

Under the plea agreement, Mr. Abbott was facing sentencing up to 210 years. The government's allocution not only reminded the court of this, but went further by discussing counts which were dismissed (Mr. Abbott was facing over 600 years if convicted of all counts in the various indictments). The government was requesting that the Court sentence Mr. Abbott to many more than the four years it had agreed to recommend. . . . The request for a "significant period of incarceration" tied to a recitation of the charges pled to and the charges indicted was a material breach of that agreement.

The court denied appellant's motion to withdraw his guilty plea, stating in its order:

> The government's statements that summarized the number of offenses to which the defendant pleaded guilty and defendant's role in the overall operation served to explain the government's allo-

---

4. Despite this statement, defense counsel did not assert that the government had breached the plea agreement in any respect.

5. Appellant was sentenced to consecutive prison terms of two or three years each on the seven counts to which he pleaded guilty.

6. In this motion appellant did not allege that the government had breached the plea agreement. The main argument presented in the motion was that the court should have followed the federal sentencing guidelines. In its order denying the motion, the court stated, "As defendant knows, the federal sentencing guidelines do not apply in this case." (The court was of course correct; the federal sentencing guidelines do not apply at all in the District of Columbia courts.) The court also said that it had sentenced appellant to a total

of seventeen years because he "was, in this court's view, a persistent drug trafficker, if not a major one."

7. Although appellant's motion cited Super. Ct. Crim. R. 34(e) and 35, the court properly treated it as a motion to withdraw a guilty plea filed under Super. Ct. Crim. R. 32(e). *See Wallace v. Warehouse Employees Union,* 482 A.2d 801, 804 (D.C.1984) ("The nature of a motion is determined by the relief sought, not by its label or caption"). Rule 32(e) states:

> A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.

cution cap of four years of incarceration. The government was not obliged to remain silent at sentencing. Nothing that the prosecutor said contravened her promise to limit her allocution to four years. Her allocution was in strict compliance with the terms of the plea bargain. Thus defendant has failed to demonstrate "manifest injustice."

This appeal followed.

## II

■■■ The issue presented in this case is whether the trial court abused its discretion in denying appellant's motion to withdraw his guilty pleas. "A defendant may successfully move to withdraw a guilty plea under Rule 32(e) by establishing that either (1) there was a fatal defect in the Rule 11 proceeding when the guilty plea was taken; or (2) justice demands withdrawal under the circumstances of the case." *Pierce v. United States,* 705 A.2d 1086, 1089 (D.C.1997) (citation omitted), *cert. denied,* 525 U.S. 1087, 119 S.Ct. 838, 142 L.Ed.2d 693 (1999); *see also, e.g., Springs v. United States,* 614 A.2d 1, 3–4 (D.C.1992). There is no claim here of any Rule 11 violation; these appeals concern only the second of these two grounds. "To move successfully for post-sentence withdrawal, a defendant must demonstrate un-

der Rule 32(e) that permitting the plea to stand would result in 'manifest injustice.' " *Carmichael v. United States,* 479 A.2d 325, 327 (D.C.1984); *see also, e.g., Binion v. United States,* 658 A.2d 187, 190 (D.C. 1995). "Irrespective of whether such a motion is made prior or subsequent to sentencing, the standard of appellate review is abuse of discretion." *Bettis v. United States,* 325 A.2d 190, 195 (D.C. 1974) (citations omitted); *see Gooding v. United States,* 529 A.2d 301, 306 (D.C. 1987) ("Whether brought before or after sentence, these motions are addressed to the sound discretion of the trial court, and we reverse only upon a showing of abuse of such discretion"); *Carmichael,* 479 A.2d at 327 ("The trial court's disposition of a motion to withdraw a guilty plea pursuant to [Rule] 32(e) will be disturbed on appeal only if there has been an abuse of discretion").[8]

■■■ Appellant's main argument, both here and in the trial court, is that "[w]hile not explicitly asking for incarceration greater than four years, the government implicitly suggested that it favored a greater sentence" when it recounted the charges against appellant and recommended that the court impose "a significant period of incarceration."[9] For the

**8.** Although the government acknowledges in its brief that the usual standard of review is abuse of discretion in appeals from orders denying motions to withdraw pleas of guilty, the government urges us in this particular case to apply a "clear error" standard instead. It asserts that "this court has not yet explicitly defined the standard of review applicable to a trial court's denial of a motion to withdraw a guilty plea based on the alleged breach of a plea agreement," and cites *United States v. Gary,* 351 U.S.App. D.C. 380, 291 F.3d 30 (2002), in support of its argument that we should adopt a clear error standard for this type of case, which it views as "present[ing] a mixed question of law and fact." In *Gary* the District of Columbia Circuit stated, "[W]e review the District Court's factual

findings regarding alleged breaches of the plea agreement for clear error." *Id.* at 383, 291 F.3d at 33 (citation omitted). We decline to adopt the government's suggestion because this court for many years has consistently applied an abuse of discretion standard, which we regard as binding. *See Gooding,* 529 A.2d at 306; *Carmichael,* 479 A.2d at 327; *Bettis,* 325 A.2d at 195; *see generally M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

**9.** For two reasons, we do not specifically address appellant's contention that "[c]omparing appellant (and his agreement) to other defendants sentenced in 'Operation Gold Coast' had the added effect of urging the sentencing court to disregard the plea agree-

following reasons, we are satisfied, as was the trial judge, that the government fulfilled its part of the plea bargain.

 There is no dispute that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see White v. United States*, 425 A.2d 616, 618 (D.C.1980) ("The government has a duty to fulfill its promises in a plea bargain"). The government is held to "a standard of strict compliance with its agreement," and this court "will construe any ambiguity against the government." *Id.* (citations omitted). "If the promise [is not] fulfilled, and the deviation is material, the waiver of constitutional rights that a guilty plea represents is invalidated and cannot be enforced." *Roye v. United States*, 772 A.2d 837, 841 (D.C. 2001); *see also White*, 425 A.2d at 618 ("If the government violates its bargain, it is irrelevant that the government's remarks may not have influenced the sentencing judge"). Nevertheless, appellant bears the burden of establishing that the plea agreement was breached. *See United States v. Ahn*, 343 U.S.App. D.C. 392, 402, 231 F.3d 26, 36 (2000). We hold that appellant has not sustained that burden.

In support of his argument that the government breached the plea agreement, appellant relies principally on this court's decision in *White*. In that case the government agreed that it would not oppose a substantial suspended sentence or a placement of the defendant in a residential drug treatment program. During sentencing, however, the government contradicted its earlier promise not to oppose a residential drug treatment program when the prosecutor said he was "concerned" that the defendant had "[gone] through so many programs." 425 A.2d at 617. Defense counsel immediately objected, and the prosecutor withdrew the statement. We concluded that, although the government "did not directly violate its promise," "[t]he statement implied that, but for the plea agreement, the government would be recommending a period of incarceration." *Id.* at 619. We therefore held that the government had breached the plea agreement, because withdrawing the statement of "concern" was a "perfunctory gesture" that "could not cure the breach." *Id.* *White* is distinguishable from the present case, however, because the prosecutor in this case never stated or implied that the court should impose a harsher sentence than the one that the government had already agreed to recommend.

The prosecutor recommended four years of total prison time, which was precisely what was called for under the plea agreement. Her remarks concerning the charges against appellant and "a significant period of incarceration" simply explained that recommendation to the court. Indeed, the court recognized this, as it stated in its order denying appellant's motion to withdraw his guilty plea: "The government's statements that summarized the number of offenses to which the defendant pleaded guilty and defendant's role in the overall operation served to explain the

ment as it had done in other cases already sentenced." First, as the government correctly points out, the record does not contain any information about the other defendants' plea agreements or their sentences. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111–112 (D.C.1982) (appellant bears the burden of pre-

senting an appellate record sufficient to show affirmatively that error occurred). Second, the government's reference to the other defendants during appellant's plea hearing was made in an attempt to explain its allocution, which, as we shall explain, it had a right to do.

government's allocution cap of four years of incarceration."

Appellant maintains, however, that "the request for a 'significant period of incarceration' tied to a recitation of the charges pled to and the charges indicted was a material breach of [the] agreement." We do not agree. When the government allocutes at a sentencing, it is allowed to make both "a recommendation to the court on the sentence to be imposed *and* to present information in support of [its] recommendation." D.C.Code § 23–103(a) (2001) (emphasis added); *see also* Super. Ct. Crim. R. 32(c)(1) ("The prosecutor shall have an equivalent opportunity to address the court and present information pertinent to sentencing"); *In re C.S. McP.*, 514 A.2d 446, 450 (D.C.1986) ("a prosecutor's allocution means 'to address the court and to make a recommendation . . . on the sentence to be imposed and to present information in support of [the] recommendation'" (citation omitted)). Viewing the prosecutor's statement in context, we are satisfied that that is precisely what the prosecutor did here. We therefore conclude that appellant did not receive a "recommendation qualified by a disclosure that the government had . . . misgivings," *Roye*, 772 A.2d at 840–841, but that the prosecutor's comments were made "in support of [her] recommendation." D.C.Code § 23–103(a).

Nor is there any other reason to conclude that there was manifest injustice—or, stated another way, that "justice demands withdrawal [of the plea] under the circumstances of the case." *Pierce*, 705 A.2d at 1089. "Manifest injustice can take several forms." *Johnson v. United States*, 812 A.2d 234, 240 (D.C.2002). In the context of a plea agreement, it may exist if the defendant was coerced into pleading guilty or did not knowingly plead guilty, *Carmichael*, 479 A.2d at 327, or if the government failed to comply with the terms of the agreement. *Johnson*, 812 A.2d at 240. None of these situations is present in this case. Under Rule 32(e), a showing of prejudice is essential to a claim of manifest injustice. *See Hicks v. United States*, 362 A.2d 111, 113 (D.C.1976). Appellant has failed to show, or even to allege, any way in which he might have been prejudiced by the prosecutor's statements, other than the one we have already rejected, namely, that the prosecutor breached the plea agreement.

Indeed, there are at least three reasons why the prosecutor's remarks did not prejudice appellant. First, as previously discussed, the government was expressly allowed by statute and rule to explain its allocution. Second, during the plea hearing, the court specifically pointed out to appellant that he could receive a sentence greater than what the government had agreed to recommend. *See Byrd v. United States*, 801 A.2d 28, 35 (D.C.2002) (the sentencing court is not "obligated to follow the government's recommendation"). Before accepting anyone's guilty plea, the court made it "very, very clear" to appellant and his co-defendants that it was "not in on that deal," and appellant acknowledged that he understood this. Third, the court knew that the government had capped its allocution at four years of total prison time. *See United States v. Griffin*, 259 U.S.App. D.C. 383, 389, 816 F.2d 1, 7 (1987) (no manifest injustice, even though the prosecutor "went over the line" in his allocution, because the trial court had been "informed of the terms of the plea agreement and of what the government's recommendation on penalty was to be"). We reject any notion that the prosecutor may have breached the plea agreement by making its sentencing recommendation in a half-hearted manner. As the *Griffin* court declared in refusing to accept a similar argument, "the government's agreement to recommend a particular sentence does not carry with it an

implied requirement that the prosecutor make the recommendation 'enthusiastically' . . . ." *Id.* at 389 n. 2, 816 F.2d at 7 n. 2 (citing *United States v. Benchimol,* 471 U.S. 453, 455, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985)). We agree with the trial court that the prosecutor's allocution "was in strict compliance with the terms of the plea bargain" and that appellant has therefore failed to demonstrate manifest injustice.

## III

For the foregoing reasons, we find no abuse of discretion and no other legal error in the trial court's order denying appellant's motion to withdraw his guilty pleas in these six cases. That order is accordingly

*Affirmed.*