**Donald W. PERROW, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 06–CO–796.**

District of Columbia Court of Appeals.

Argued March 4, 2008.

Decided April 24, 2008.

---

Before FARRELL, Associate Judge, and PRYOR and BELSON, Senior Judges.

FARRELL, Associate Judge:

Appellant pleaded guilty to assault with intent to kill Tina Vaughn (AWIK) as part of a plea agreement in which the government agreed to dismiss multiple other charges, including AWIK with aggravating circumstances, aggravated assault, and obstruction of justice. The government further agreed that it would "cap" its recommendation for a term of imprisonment at eight years.[1] Appellant now contends that the trial judge erred in denying his post-sentence motion for resentencing in which he alleged that the government had breached the plea agreement by impliedly urging the judge to sentence him to more than eight years in prison. Because we are not persuaded that the judge erred in finding no breach of the agreement, we affirm.

■ In *Louis v. United States*, 862 A.2d 925 (D.C.2004), we adopted the standard of review employed by the District of Columbia Circuit in this context, whereby the appellate court "interprets the terms of the plea agreement *de novo* and ... reviews the [trial court's] factual findings regarding alleged breaches of the plea agreement for clear error." *Id.* at 928 (quoting *United States v. Gary*, 351 U.S.App. D.C. 380, 383, 291 F.3d 30, 33 (2002)). Yet in a later decision, *Abbott v. United States*, 871 A.2d 514 (D.C.2005), we appeared to reject a "clear error" test in favor of the abuse of discretion standard followed generally in reviewing the denial of such post-sentence motions. *See id.* at 519 & n. 8. We do not have to resolve the tension between these two holdings here.

O. Dean Sanderford, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Peter S. Smith, Assistant United States Attorney, for appellee. Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Mary B. McCord, and Robert C. Bowman, Assistant United States Attorneys, were on the brief for appellee.

1. Ultimately, the court sentenced appellant to a prison term of thirteen years because of—it said—the "deliberate cruelty" and "gratuitous violence inflicted upon the victim in a manner substantially beyond that normally associated with this offense."

Either test—clear error or abuse of discretion—accords some recognition to the fact that the trial judge is "in the best position to determine whether the government presented an argument that, perhaps subtly, exceeded the bounds of the agreement." *United States v. Pollard,* 295 U.S.App. D.C. 7, 19, 959 F.2d 1011, 1023 (1992). Exactly how much deference we perforce give to the trial judge's finding of no breach is not decisive here, and need not prolong our discussion.

■ The relevant term of the plea agreement is not in dispute: the prosecution bound itself not to allocute for imprisonment beyond eight years. On the disputed issue of whether the prosecutor breached this agreement, appellant has the burden of persuasion. *Abbott,* 871 A.2d at 520 (citing and implicitly adopting, on this point, *United States v. Ahn,* 343 U.S.App. D.C. 392, 402, 231 F.3d 26, 37 (2000)). We must consider three separate but related events in assessing whether appellant has met that burden: the plea proceeding at which the parties recited the terms of the agreement; the prosecutor's allocution reflected in the written sentencing memorandum that he (like the defense) submitted; and the sentencing hearing itself.

The plea proceeding provides no even arguable support for appellant's claim of a breach of the agreement. There the prosecutor told the judge repeatedly that the government would be "cap[ping] its allocution at 96 months" and, further, would not oppose the defense arguing for a sentence as low as 48 months, the lower end of the initial agreed-upon four-to-eight year range under the trial court's sentencing guideline.[2] This agreement, both parties emphasized, was despite the fact—which they had learned since reaching agreement—that appellant's criminal history

category under the guideline exposed him to a considerably greater range of punishment than four to eight years. Thus, at the conclusion of the plea the trial judge knew unequivocally, in defense counsel's words, that "the parties are saying that the valid argument [the parties have] is between 48 and 96 months for his sentence." No suggestion had been made that the prosecutor was dissatisfied with the cap he agreed to.

■ Appellant argues, however, that this changed when the government submitted its sentencing memorandum, where, in several ways (he asserts), the prosecutor forcefully conveyed his dissatisfaction with the 96–month cap. This began with a footnote in which he made repeated—and, appellant says, gratuitous—references to the court's authority to reject the parties' agreement as to sentence. He followed this up with an express signal in the text (appellant continues) that 96 months should be the floor rather than the "cap" of an appropriate sentence, an appeal bolstered by a lengthy and florid description of appellant's bad acts and propensity for violence. However, appellant has not convinced us that the judge erred in finding that these statements did not, either singly or together, manifest an intent to breach the plea agreement.

First, we do not agree that the prosecutor could have had no benign or legitimate reason for referring to the court's authority to reject the agreement. The footnote in question—and it was that, a footnote—was a detailed recital of the parties' oral description of the agreement in appellant's presence before the plea and of the judge's reaction to it, including the remarks he had addressed to appellant in light of the newly-learned fact that he was eligible for a substantially longer prison sentence than the parties had understood

---

2. The reference here is to the Superior Court's Voluntary Sentencing Guidelines.

in first agreeing. In this context of a changed understanding, the footnote pointed out that appellant nonetheless had "agreed to go forward with the plea" after the judge "made a specific inquiry of [him] regarding all aspects of the ... agreement" including that the judge was not bound by its terms, specifically the "downward departure" from the correct guideline range the defense would be permitted to advocate. Readily educible from this recital by the prosecutor was a purpose to assuage any misgivings the judge still might have about the knowing and voluntary nature of a plea entered despite an eleventh-hour change in the sentencing range it presupposed.[3] By contrast, the covert invitation appellant sees in the footnote for the judge to exercise his power to exceed the prosecutor's "cap" is too speculative to prove the claim of breach.

■ Appellant's main attack is reserved for the prosecutor's sentencing memorandum, where—in the language appellant foregrounds—the prosecutor told the judge that "[j]ustice demands that this Court impose a period of incarceration that is not less than the government requests, i.e., 96 months." This came on the heels of a lengthy exposition of appellant's abuse and cruelty toward the victim, leading to an assertion that "time [he] spends incarcerated is time in which he cannot commit the next logical step in his escalating pattern of criminal behavior," i.e., to "kill Ms. Vaughn or his next vulnerable, helpless victim." Appellant, in our view, confuses vigorous allocution "presented to ensure that [he] received the maximum amount of incarceration the plea agreement would allow," Louis, 862 A.2d at 929, with an appeal to disregard the agreed-upon cap. Arguing for a sentence of "not less than" 96 months does not equate with

asking for one of "more than" that length unless one assumes the very purpose—to subvert the agreement—appellant has the burden to demonstrate. Agreeing to a maximum sentence cannot fairly preclude argument that, despite any defense appeal for a "downward departure," this cap should limit any leniency the court shows in punishing. Moreover, the prosecutor's concern to forestall a sentence below the cap was understandable here: He knew that appellant was free under the agreement to argue for a sentence of as low as 48 months, well below the correct sentencing range, and that appellant planned to do so with support for an inference that his assault on Vaughn had been aberrational and not symptomatic of a propensity to violence. Thus, the prosecutor could justifiably fear that the judge would be swayed to "split the difference" with a sentence significantly below what the prosecutor thought was commensurate with the violent act.

■ Nor may an intent to urge a sentence of "at least" eight years—hence impliedly more—be fairly gleaned from the prosecutor's description of appellant's pattern of assaults or threats. The government had not waived allocution, and when allocuting it, like the defense, was allowed "to make both 'a recommendation ... on the sentence to be imposed and to present information in support of [it].'" Abbott, 871 A.2d at 521 (quoting D.C.Code § 23–103(a) (emphasis by Abbott)); see also Ahn, 343 U.S.App. D.C. at 404, 231 F.3d at 38 (in plea agreement context, government nonetheless had obligation to bring all relevant facts to court's attention at sentencing). In doing so it was not required by the agreement to "treat [appellant] gently or to minimize the danger," Pollard, 295 U.S.App. D.C. at 21, 959 F.2d at 1025, he

---

3. The plea had not been entered without a hitch, as appellant initially balked at admitting that he had beaten Vaughn with the

intent to kill her (prompting the judge to ask "Do we need a trial date, gentlemen?").

posed to Vaughn or others unless incarcerated for a lengthy period of time. In *Louis, supra,* the government presented similar sentencing information to support its argument that the defendant *"more than* warrants the five to fifteen years the Government agreed to" and that "I don't see how the Court can do anything but impose" that sentence. 862 A.2d at 929 (emphasis added). We found no sign of a breach in those remarks or the presentation of evidence supporting them, nor do we here. The prosecutor's memorandum began with the straightforward request "that the Court sentence the defendant to 96 months" and concluded with the same request, "in the strongest possible terms," to "sentence him to 96 months in prison." The trial judge saw nothing in those requests, or in what was said between them, evincing an intent to subvert the commitment the prosecutor had made. Appellant has not persuaded us that the judge erred.[4]

■ Finally, the prosecutor's failure at the sentencing hearing to mention the 96 months, instead simply asking the judge to "met[e] out justice ... that makes this punishment understandable for this act," does not add to the showing appellant must make. Since the judge, by that time, could not have been ignorant of the parties' recommendations (he referred to both sentencing memoranda in his remarks), the prosecutor limited himself—in only two and half transcript pages of allocution—to rebutting the theme he saw in the defense memorandum of portraying the assault as "just sort of [an] impulse," something "that happened in the spur of the moment," rather than as reflecting anything in appellant's character or propensity. The prosecutor's "silence" about the actual sentence he recommended is thus unlike the "failure to recommend a sentence" that the government conceded was evidence of a breach in *Byrd v. United States,* 801 A.2d 28, 33 (D.C.2002), cited by appellant. Indeed, we held in *Byrd* that "[t]he government did more than simply remain silent at appellant's sentencing; in practical effect, [it] actively sought a more severe sentence than the one it had agreed to recommend." *Id.* For the reasons we have stated, neither at sentencing nor in his written allocution did the prosecutor convey "active" signals of disenchantment with the bargain he had struck.

As in *Abbott, supra,* "[w]e agree with the trial court that the prosecutor's allocution was in strict compliance with the terms of the plea bargain." 871 A.2d at 522 (quotation marks omitted). Our decisions do not read the "strict compliance" principle, *see White, supra* note 4, 425 A.2d at 618, to mean that an agreed upward limit must be given a wide berth in allocution, and we are satisfied that the prosecutor did not cross over the line here.

*Affirmed.*

---

4. Appellant enlists for his argument the principle that the court "will construe any ambiguity against the government." *White v. United States,* 425 A.2d 616, 618 (D.C. 1980). Although the government reads that principle to mean only that plea agreements themselves—their terms—will be "construed ... liberally to favor defendants," *State v. Witte,* 308 Minn. 214, 245 N.W.2d 438, 439 n. 2 (1976) (en banc) (cited by *White*), appellant notes its application by our cases to the prosecutor's compliance with the agreement. Regardless, the ambiguity principle is not a substitute for analysis; as in contract law generally, words are not ambiguous because a party says they are. *See Holland v. Hannan,* 456 A.2d 807, 815 (D.C.1983). Appellant has not convinced us that the prosecutor, even in a veiled—*i.e.,* ambiguous—fashion, was attempting to subvert the recommendation he repeatedly stated to the judge.