**D'Angelo JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 09–CF–1424.**

District of Columbia Court of Appeals.

Submitted Oct. 4, 2011.

Decided Nov. 3, 2011.

---

** Judge Kramer was recused from this case. She retired on May 1, 2011.

*** Judge Reid was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on April 7, 2011.

Lisa D. Chanel was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, John P. Mannarino, David P. Saybolt, and Jay Apperson, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and TERRY, Senior Judge.

GLICKMAN, Associate Judge:

Pursuant to a plea agreement in which the government promised not to oppose concurrent prison sentences at the midpoint of the applicable sentencing guideline range, D'Angelo Johnson pleaded guilty to the crimes of second-degree murder and assault with a dangerous weapon ("ADW"). The trial court sentenced him to consecutive terms of imprisonment above the midpoint—specifically, to 240 months for the homicide and eighteen months for the ADW. Johnson now appeals his sentence, contending that the government breached its plea agreement with him by implicitly asking for a longer sentence than the one it promised to support. We do not agree; the government fulfilled its promise, and thus appellant is not entitled to the resentencing he seeks.

## I.

The charges to which appellant pleaded guilty related to an incident on October 19, 2008, in which he shot at and killed one

Karon Shannon and inadvertently wounded a bystander.[1] The plea agreement provided that the government reserved its right to allocute at appellant's sentencing but would not seek a term of imprisonment above "the mid point range" of the applicable sentencing guideline range or oppose concurrent sentences on the two counts of conviction.[2] Appellant and the government advised the court of these promises when appellant tendered his guilty pleas on April 17, 2009. At the time, appellant confirmed his understanding that the court was not bound by the government's agreement or the voluntary sentencing guidelines and could sentence him to up to forty years for second-degree murder and ten years for ADW.

Appellant's presentence report computed applicable sentencing guideline ranges of twelve to twenty-four years for second-degree murder (prison only) and one and one-half to five years for ADW (prison or "short split"[3]). In a written submission prior to sentencing, appellant noted the government's agreement to "cap its allocution at the mid-point," i.e., eighteen years for the murder count, and not to oppose a concurrent sentence on the ADW count. Identifying a number of mitigating circumstances, however, appellant urged the court to sentence him to a period of incarceration "toward the low end of the [g]uideline range." In support of that request, appellant submitted, among other things, a report prepared by a developmental psychologist, who opined that twelve years in prison (the minimum under the guidelines) "would provide adequate time for [appellant] to address the problems arising from his background and experiences."[4]

The government's memorandum in aid of sentencing confirmed its "promise[ ] ... to cap its allocution on the homicide at the mid-point of [appellant's] guideline range, and not to oppose concurrent sentencing on the two counts." Specifically, the gov-

---

1. In response to the court's questions at the time of the plea, appellant said he shot Shannon to pay him back for having disrespected him and threatened his little sister. Appellant admitted pulling the gun from his sleeve and firing four shots at Shannon (one of which hit a fifteen-year-old bystander in the leg).

2. Specifically, paragraph 6 of the plea agreement stated as follows:
   6. Your client [appellant] understands that the Court may utilize the District of Columbia Sentencing Commission's Voluntary Sentencing Guidelines in imposing the sentence in this case. Although the Government reserves the right to allocute at your client's sentencing in this case, it agrees not to oppose your client's request that he/she be sentenced to a period of incarceration that does not exceed the mid point range of whatever guideline range is determined by the Court to apply in this case. In addition, the Government and your client agree that neither party will seek an upward or downward departure outside of your client's applicable guideline range. Finally, the government will not oppose[ ] defen-

dant's request [that] any sentences of incarceration on the two charges in this case be run concurrent to each other.
The agreement also provided that appellant was free to request "a lesser sentence" within the guideline range.

3. A "short split" sentence is one in which the court imposes a prison sentence that falls within the guideline range for prison time, but "suspend[s] execution of all but six months or less—but not all—of that sentence, and impose[s] up to 5 years probation." DISTRICT OF COLUMBIA VOLUNTARY SENTENCING GUIDELINES MANUAL (2008) at 3–3 to 3–4; see also id. at Appendix G. By contrast, "[i]f the judge suspends all of the prison term, that would be considered to be probation and not a short split." Id. at 3–3.

4. "Based upon my experience and knowledge," the psychologist added, "I would recommend [appellant] for parole when he completes the minimum sentence and makes use of rehabilitative and developmental opportunities available to him during that period."

ernment asked the court to impose "a sentence at or near the mid-point of [appellant's] [g]uideline range, but in any event no higher than sixteen to eighteen years." In support of its recommendation, the government argued that despite the mitigating factors relied on by appellant, he had "prove[d] himself to be extremely dangerous." In particular, the government stated, appellant's shooting of Karon Shannon was clearly a "premeditated" act:

> As he approached the decedent ... that day, [appellant] had the revolver in his hand but up his sleeve. After decedent spoke to him, [appellant] merely extended his arm and shot [the decedent] at close range, and then shot him two more times as he ran away. He didn't need to pull the gun from his waistband—he had it ready in his hand during the entire encounter.

At the sentencing hearing on October 23, 2009, the prosecutor reiterated the government's commitment to recommend a sentence at the mid-point of the guideline range and not oppose concurrent sentences. The prosecutor stated that he "was very proud" of the plea agreement and "want[ed] to emphasize ... to the Court that we came up with a plea offer which was not the most that we thought we could get in this case, but it was what I thought was the appropriate sentence of 18 years." Elaborating on the reasons for that recommendation, the prosecutor acknowledged some of the factors in appellant's favor, such as his youth (appellant

was under 18 years of age when he committed the offense); his troubled childhood and family situation; his early acceptance of responsibility; and his relatively clean criminal record. But countering such factors and calling for more than the minimum sentence within the guidelines, the prosecutor argued, was the seriousness of the crime. "[T]his was a first-degree murder," the prosecutor asserted: Appellant "walked up that block with the gun in his sleeve, planning all the time to murder Mr. Shannon." [5] Anticipating that appellant's counsel would ask for a sentence of only twelve years' imprisonment, the prosecutor urged the court "not to do that [because appellant] has been given all the appropriate breaks, in my opinion, and I think that [18 years] is the appropriate sentence."

Appellant's counsel allocuted for a lower sentence and disputed some of the prosecutor's comments—especially the prosecutor's characterization of the shooting as a premeditated, first-degree murder.[6] Appellant's counsel concluded by asking the court to impose a sentence "towards the bottom end of the guidelines," as that would be "sufficient time to punish Mr. Johnson, to allow for rehabilitation and certainly to act as a deterrent." Appellant then addressed the court himself, expressing his sorrow for his actions. At no point during the proceeding did appellant or his counsel claim that the government had violated the plea agreement in any respect.

In announcing its sentence, the trial court said it had considered appellant's

---

5. The prosecutor also expressed concern about appellant's apparent "lack of contrition and understanding ... [of] what he had done to" the victims' families.

6. Counsel stated:
   I just ... have to dispute a bit that ... this was a planned, premeditated murder that Mr. Johnson went out looking for Karon Shannon. Mr. Johnson admitted to the police and he admitted to this Court what he

did. He admitted to them that he had when he went out that night the gun in his sleeve, but nothing about looking and nothing about knowing that Mr. Shannon would be out there where he was. None of this was anything other than happenstance, unfortunately.... [T]here is no evidence, nothing to suggest that this was a first-degree murder and this was somehow premeditated.

and the government's positions, along with the presentence report, correspondence from the victims' families, and other material it had received. In the end, the court stated, it did not consider a sentence at the bottom of the guidelines to be appropriate. For the offense of second-degree murder, the court sentenced appellant to 240 months in prison. For the ADW, it imposed a prison sentence of eighteen months. The court stated that the two prison sentences would run consecutively.

Appellant did not object to the sentence or seek to withdraw his guilty plea. He appealed, however, and he now claims that the government broke its promise to support his request for a sentence of imprisonment not exceeding the mid-point of the guideline range for second-degree murder. The government did so, appellant argues, by describing his offense as a first-degree, premeditated murder, stating that the government could have obtained a longer sentence than it had agreed to recommend, and urging the court not to impose a prison sentence of only twelve years' duration. To remedy the government's putative breach of the plea agreement, appellant asks us to vacate his sentence and remand for re-sentencing by a different judge.

## II.

▮▮▮ "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." [7] The government is held to "a standard of strict compliance with its agreement." [8] The burden of showing that the government has broken its promise is on the defendant. [9] Ordinarily, in considering such a claim, this court construes the terms of the plea agreement *de novo* and defers to the trial court's factual findings regarding the alleged breach. [10] In this case, though, we have no relevant factual findings to consider because appellant never raised his claim of breach below. His claim is therefore subject to review only for plain error, [11] which means that he must show (1) "an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant"; (2) that the error is "clear or obvious, rather than subject to reasonable dispute"; and (3) that the error "affected the appellant's substantial rights" by influencing the sentence he received; in which case the appellate court has discretion to grant relief if it determines (4) that the error or defect "seriously affects the fairness, integrity or public reputation of judicial proceedings." [12]

7. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

8. *White v. United States*, 425 A.2d 616, 618 (D.C.1980).

9. *Louis v. United States*, 862 A.2d 925, 928–29 (D.C.2004).

10. *See Perrow v. United States*, 947 A.2d 54, 55–56 (D.C.2008) (noting that "the trial judge is 'in the best position to determine whether the government presented an argument that, perhaps subtly, exceeded the bounds of the agreement'") (quoting *United States v. Pollard*, 295 U.S.App. D.C. 7, 19, 959 F.2d 1011, 1023 (1992)).

11. *Puckett v. United States*, 556 U.S. 129, ——, 129 S.Ct. 1423, 1432–33, 173 L.Ed.2d 266 (2009) (holding that a forfeited claim of governmental failure to fulfill its obligations under a plea agreement is subject to the requirements of plain error review).

12. *Id.* at 1429 (internal quotation marks and brackets omitted). When the defendant has preserved his claim that the government breached its agreement, we have deemed it "irrelevant that the government's remarks may not have influenced the sentencing judge." *White*, 425 A.2d at 618. But where, as here, the claim has been forfeited and plain error review applies, the third prong requires the appellant to show a reasonable likelihood that his sentence was affected by the government's breach. *Puckett*, 129 S.Ct. at 1432–33 & n. 4. It is not enough for the appellant

Our analysis of appellant's claim stops with the first of these requirements. As set forth above, the government promised in the plea agreement "not to oppose [appellant's] request that he[ ] be sentenced to a period of incarceration that does not exceed the mid point range of whatever guideline range is determined by the Court to apply in this case." The record confirms that both parties understood this to mean the government would seek a prison term of no more than eighteen years. The prosecutor explicitly, repeatedly, and unwaveringly advocated for just such a sentence. He clearly did not violate his commitment to do so by opposing appellant's request for a sentence not at the mid-point, but at the bottom, of the guideline range. "Agreeing to a maximum sentence cannot fairly preclude argument that, despite any defense appeal for a [lesser sentence], this cap should limit any leniency the court shows in punishing." [13]

The prosecutor likewise did not break any promise by describing appellant's offense as, in reality, a first-degree premeditated murder, nor by stating that the "appropriate" sentence of eighteen years "was not the most that we thought we could get in this case." Even if these statements suggested that the recommended sentence of eighteen years in prison would be lenient—the mandatory minimum sentence for first-degree murder is thirty years [14]— the prosecutor's point, conveyed unmistak-

ably, was not that the government had misgivings about an eighteen-year sentence, but rather that such a sentence was appropriate for appellant given the gravity of his offense (and that the shorter sentence sought by appellant was not appropriate). The prosecutor's description of the crime as a premeditated killing may have been open to dispute, but it was a fair interpretation of the facts to which appellant had agreed when he entered his plea. Having reserved its right of allocution, the government was entitled to offer that interpretation and discuss the serious nature of appellant's offense "to ensure that [he] received the maximum amount of incarceration the plea agreement would allow." [15] The agreement did not require the government to treat appellant "gently" or "minimize" his conduct. [16]

In sum, we conclude that appellant has not shown that the government breached its plea agreement with him. The prosecutor "never stated or implied that the court should impose a harsher sentence than the one that the government had already agreed to recommend" and did in fact recommend without equivocation. [17] Accordingly, we affirm appellant's sentence and the judgment of conviction.

*So ordered.*

merely to show that he would not have entered his guilty plea had he known about the future violation. *Id.*

**13.** *Perrow,* 947 A.2d at 57.

**14.** *See* D.C.Code § 22–2104(a) (2011 Supp.). The guideline range for first-degree murder is 360 to 720 months of incarceration. DISTRICT OF COLUMBIA VOLUNTARY SENTENCING GUIDELINES MANUAL (2008) at A1, C–12.

**15.** *Louis,* 862 A.2d at 929; D.C.Code § 23–103(a) (2001) (during allocution, prosecutor is

allowed to make both "a recommendation to the court on the sentence to be imposed and to present information in support of his recommendation"); Super. Ct.Crim. R. 32(c)(1) ("The prosecutor shall have an equivalent opportunity to address the Court and present information pertinent to sentencing.").

**16.** *Pollard,* 295 U.S.App. D.C. at 21, 959 F.2d at 1025; *accord Perrow,* 947 A.2d at 57–58.

**17.** *Abbott v. United States,* 871 A.2d 514, 520 (D.C.2005).